In the Matter of HARRY H. POLLACK, Respondent, v VICTOR S. BAHOU, as President of the New York State Civil Service Commission, Respondent, and EDWARD R. HAMMOCK, as Chairman of the New York State Division of Parole, Appellant.

First Department, June 19, 1984

### APPEARANCES OF COUNSEL

*Leonard S. Picariello* for Harry H. Pollack, respondent.

*Arlene R. Silverman* of counsel (*Melvyn R. Leventhal* with her on the brief; *Robert Abrams, Attorney-General,* attorney), for Victor S. Bahou, respondent, and Edward R. Hammock, appellant.

### OPINION OF THE COURT

SULLIVAN, J.

Petitioner, a parole officer with the New York State Division of Parole since June, 1960, was promoted in June,

1974, after competitive examination, to the civil service title of senior parole officer, grade 22, a position in which he supervised 6 to 8 parole officers. In January, 1975, he was assigned, in the same salary grade, to conduct preliminary parole revocation hearings under the title of senior parole officer (hearing officer), a position for which he did not take any qualifying civil service examination.

Petitioner remained in that title until July, 1978, when he was informed that, effective July 20, the Division of Parole was appointing him to the position of preliminary hearing officer (parole revocation), civil service grade 24, at an increased salary. He was also advised at that time that the appointment was temporary, pending noncompetitive jurisdictional classification by the Department of Civil Service.[1]

In March, 1979, the Civil Service Commission and the Governor approved the title of preliminary hearing officer in the noncompetitive class, and on April 26, 1979 petitioner was appointed to the newly created position, subject to the satisfactory completion of an 8 to 26 week probationary term. At the same time, pursuant to subdivision 1 of section 63 of the Civil Service Law, petitioner was advised that a senior parole officer title was being held open for him pending completion of his probationary service. Five weeks later, by letter dated June 11, 1979, petitioner was advised that his probationary services as a preliminary hearing officer had been found unsatisfactory, and that, effective June 21, 1979, he was being restored to the title of senior parole officer.

On October 12, 1979, petitioner commenced this CPLR article 78 proceeding seeking reinstatement as a preliminary hearing officer. He claimed, *inter alia,* that his appointment to the position of preliminary hearing officer on April 26, 1979 could not be conditioned upon satisfactory service of a probationary term inasmuch as he had been performing the duties of that office since January, 1975.

---

1. The noncompetitive class includes all positions for which a competitive examination is not practicable. Appointment to such positions are made after such noncompetitive examination as is prescribed by the New York State Civil Service Department. (Civil Service Law, § 42.) The competitive classification includes all positions for which it is practicable to determine merit and fitness by competitive examination. (Civil Service Law, § 44.)

Petitioner also argued that even if the imposition of a probationary term was valid his removal at the end of the minimum term was in bad faith and, thus, arbitrary and capricious. The Division of Parole's answer consisted of a general denial. In addition, it asserted that petitioner's October, 1979 challenge to the April 26, 1979 imposition of a probationary term was untimely.

Special Term held, without citation to any authority, that if, as a senior parole officer, petitioner had been performing the identical duties from 1975 until 1978, his appointment to the newly created position of preliminary hearing officer could not be conditioned upon the satisfactory completion of a probationary term. Special Term also found that the petition raised "questions regarding [the Division of Parole's] exercise of good faith in petitioner's termination eight weeks after the imposition of a probationary period." Without ruling on the Statute of Limitations defense, it ordered a trial of these two factual issues.

At trial, it was shown that in 1972, two years before petitioner's promotion to senior parole officer, the United States Supreme Court in *Morrissey v Brewer* (408 US 471) held, for the first time, that parole revocation proceedings must comport with due process. Among the protections to be accorded a parolee were the right to be notified, in advance, of the parole violations with which he was being charged; to have his case heard by a neutral fact finder; and to have disclosure of the evidence against him and the opportunity to present evidence and witnesses. The parolee was entitled to a written decision setting forth the hearing officer's findings and the evidence relied upon. *Morrissey* also required a preliminary hearing to be held at or near the place of the alleged parole violation, as promptly after arrest as was convenient, to determine whether probable cause existed to believe that the parolee had violated the conditions of his parole. The preliminary hearing had to be followed by a final revocation hearing.

As required by *Morrissey,* the Board of Parole created a two-step hearing process — the preliminary hearing and the final revocation hearing. Since, as a practical matter, the Board of Parole could not, as required, travel to the local jailhouses to conduct preliminary hearings, it desig-

nated certain individuals within the Division of Parole, then part of the Department of Correctional Services, to conduct these hearings. Generally, the individuals designated were senior parole officers who had had no prior involvement with the parolee involved. Experience soon showed, however, that a senior parole officer without any prior contact with the particular case was difficult to find. Accordingly, the Division of Parole decided to select a fixed number of senior parole officers, civil service grade 22, on a voluntary, full-time basis, to conduct these preliminary hearings. Petitioner, and two other senior parole officers, William Greenberg and Wayne Gaffney, volunteered. In addition, other senior parole officers continued on a voluntary basis, from time to time, to conduct preliminary hearings. For the convenience of the Department of Correctional Services, the three full-time volunteers were identified on Department records as "senior parole officers (hearing officers)." This designation, however, was not a civil service title.

At this time preliminary hearings were regarded as informal proceedings which were part of the parole field operation. In fact, the regulations of the Department of Correctional Services recited that "violation hearings are not adversary proceedings." Except for some meetings held in January, 1975 with the Department's counsel to review revocation procedures and the occasional circulation of a memorandum, no ongoing legal training sessions were provided for the senior parole officers who conducted these hearings.

In July, 1977, the New York State Legislature enacted, effective January 1, 1978, article 12-B of the Executive Law, which, in addition to reuniting the Division of Parole with the Board of Parole after a separation of approximately seven years, codified *Morrissey v Brewer* (*supra*) and provided, for the first time, a statutory as well as regulatory basis (9 NYCRR part 8005) for the conduct of revocation hearings. Preliminary hearings now had to be held within 15 days after a warrant for retaking and temporary detention had been executed. (9 NYCRR 8005.6 [a].) The standard of proof at the preliminary hearing became probable cause to believe that the parolee had

"violated one or more of the conditions of his release in an important respect." (9 NYCRR 8005.7 [a] [3].) The violator was given the right to be represented by counsel. (9 NYCRR 8005.5 [a].) Preliminary hearing officers, now specifically referred to in the regulations as "officers of the division", were authorized to issue subpoenas (9 NYCRR 8005.4 [b] [2]) where, previously, only members of the Board had been authorized to do so.

Although five civil service titles were established for final revocation hearing officers as of January 1, 1978, preliminary hearings continued to be conducted by the three full-time senior parole officer volunteers, one of whom was petitioner, and, from time to time, the approximately 70 to 75 other parole officers on a voluntary basis. In February, 1978, however, the Division decided to reduce the number of senior parole officer titles by three and to request the reclassification of these three competitive titles, civil service grade 22, to three noncompetitive preliminary hearing officer titles, civil service grade 24. The Division's reclassification request was eventually approved, effective July 20, 1978, and petitioner as well as Greenberg and Gaffney were temporarily appointed to the new titles pending the outcome of the Division's additional request that the new positions be placed in the noncompetitive civil service class. With the establishment of the temporary positions of preliminary hearing officer on July 20, 1978, senior parole officers, civil service grade 22, no longer conducted preliminary hearings except in an emergency.

At the same time the supervision of preliminary hearings was removed from parole field services and made the responsibility of the Board of Parole's counsel, Herman Graber. Under Graber, hearing officers, both preliminary and final, were required, as part of a training program, to attend monthly meetings at which staff members would make an oral presentation about some aspect of the hearing procedure. Graber, who attended these monthly meetings, had an opportunity to observe petitioner and the other hearing officers and to assess their ability and understanding of the hearing process. He also became familiar with the performance of petitioner and the other hearing

officers from reading hearing minutes and from the reports of other Division employees who were monitoring the hearing process.

Graber testified that in reviewing petitioner's performance he learned that many cases assigned to petitioner had been mismanaged, and that petitioner repeatedly showed difficulty with the concept of probable cause. In one case, where the evidence established that a parolee was living with a known felon in violation of the rules of parole, he failed to find probable cause. Similarly, on another occasion, he refused to find a parole violation where the proof established the parolee's possession of marihuana, an illegal drug. He adjourned cases beyond the legally allowed limit of 15 days, thereby assuring automatic vacatur of the parole warrant. He was unable to conduct a proper examination of an infant as to her competency to testify under oath, and, without legal authority, scheduled a psychiatric examination for a parolee. In addition to learning of petitioner's difficulties with the concept of probable cause, the rules of evidence and the policies of the Division with regard to the conduct of a preliminary parole revocation hearing, Graber also received reports from parole officers complaining about his deportment in conducting hearings.

In March, 1979, the temporary position of preliminary hearing officer received noncompetitive jurisdictional classification and the Division of Parole, for the first time, was able to make a permanent appointment to the position. As supervisor of all hearing officers, both preliminary and final, Graber had to decide which senior parole officers deserved permanent appointment to the newly created promotional positions. On the basis of his poor performance, Graber decided against petitioner's appointment. After ascertaining that petitioner would be serving a probationary period of 8 to 26 weeks,[2] during which his appointment could be terminated if his performance proved unsatisfactory, Graber, however, acceded to petitioner's request for appointment to the new position. This appointment was made on the express understanding, confirmed in writing, that petitioner's performance must improve or

---

**2.** In relevant part, 4 NYCRR 4.5 (a) (1) then provided that "every original appointment to a position in the noncompetitive, exempt or labor class shall be for a probationary term of not less than 8 nor more than 26 weeks."

he would be returned to his former civil service title. Petitioner did not object. Both Gaffney and Greenberg, the other senior parole officers who had also conducted preliminary hearings full time on a voluntary basis, received the same probationary term appointment.

Petitioner's earlier problems in conducting a preliminary hearing again surfaced. In one instance, he prematurely made a finding of probable cause before the parolee could cross-examine the Division's witnesses or present his evidence. Shortly thereafter, Graber decided to terminate petitioner's appointment after service of the minimum probationary period. He met with petitioner and suggested that he resign to avoid an unfavorable report. When petitioner refused, Graber prepared a final evaluation and petitioner was notified by letter dated June 11, 1979 that, effective June 21, 1979, he would be returned to the position he had previously held, senior parole officer, civil service grade 22.

Citing Special Term's prior holding that if the duties were identical, petitioner's appointment could not be conditioned upon service of a probationary term, and finding that "petitioner performed the same duties as Senior Parole Officer (Hearing Officer) as he did as a Preliminary Hearing Officer", Trial Term ordered that the Division of Parole reinstate him to the civil service title of preliminary hearing officer, civil service grade 24. A judgment to that effect was entered from which the Division of Parole appeals. We would reverse and dismiss the petition.

Special Term erred in holding, as a matter of law, that if petitioner, as a senior parole officer (hearing officer), had performed substantially the identical duties of the position of preliminary hearing officer from 1975 to 1978, he could not be subjected to a probationary term upon the reclassification of his position to a higher title. The propriety of that ruling is before us since an appeal from a final judgment brings up for review "any non-final judgment or order which necessarily affects the final judgment" (CPLR 5501, subd [a], par 1).

While section 63 of the Civil Service Law compels a probationary term only for original appointments in the competitive class and interdepartmental promotion, nei-

ther of which situations applies here, since petitioner's new grade 24 position is in the noncompetitive class, the statute also authorized the State Civil Service Commission, as well as municipal civil service commissions, to provide, "by rule, for probationary service upon * * * appointment to positions in the exempt, non-competitive or labor classes." The State Civil Service Commission did adopt such a rule, which at the time stated, "[E]very original appointment to a position in the noncompetitive, exempt or labor class shall be for a probationary term of not less than 8 nor more than 26 weeks" (4 NYCRR 4.5 [a] [1]).[3] Indeed, such rule would seem to settle the issue of whether petitioner was entitled to automatic tenure upon his new appointment, as he contends, or was subject to a term of probation, as the Division of Parole contends, except that petitioner argues that the Civil Service Law does not authorize a probationary term upon a reclassification in title since such reclassification obviously presumes the prior satisfactory performance of equivalent duties. Petitioner is unable, however, to cite any authority, statutory or otherwise, for such a proposition.

Petitioner's argument is grounded, apparently, in the notion that he should be, in some way, "covered into" the new position because, as early as 1975, as a senior parole officer, he had originally volunteered to undertake similar responsibilities. A temporary, voluntary assignment cannot ripen into a permanent appointment. (*Matter of Hilsenrad v Miller,* 284 NY 445.) Neither petitioner nor the other two senior parole officers who were appointed to the higher paying reclassified positions had any special right to those appointments to the exclusion of all the other eligible senior parole officers who, from time to time, had also acted as hearing officers. Although the appointing official chose to appoint the three incumbents to the three new reclassified positions in the noncompetitive class, he was not required to do so. Were it otherwise, the constitutional mandate that promotion be on merit (NY Const, art V, § 6) would be violated. Indeed, the imposition of a probationary term upon petitioner's reclassification to a quasi-judicial position of enhanced prestige and salary was consistent

---

**3.** The rule has been amended several times since these events.

with the command of subdivision 3 of section 121 of the Civil Service Law: "No employee whose position is reclassified shall be promoted, demoted, transferred, suspended or reinstated except in accordance with the provisions of [the Civil Service Law]."

In any event, petitioner's challenge to the imposition of a probationary term upon his permanent appointment to the new position of preliminary hearing officer is time barred by virtue of his failure to institute this proceeding within four months of his permanent appointment. On April 25, 1979, petitioner was advised in writing that, effective April 26, 1979, he was being appointed to the permanent noncompetitive position of preliminary hearing officer (parole revocation), civil service grade 24, subject to a 8 to 26 week probationary period. Voicing no objection, petitioner commenced service of the probationary term on April 26, 1979. Thus, the determination to subject petitioner's appointment to a probationary term was final and binding no later than April 26, 1979. Approximately 5½ months elapsed before petitioner, alleging, *inter alia,* that the imposition of a probationary term on his appointment was illegal, commenced this action. "[A] proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner" (CPLR 217).

Petitioner attempts to excuse his failure to challenge timely the imposition of a probationary term by arguing that this proceeding asserts but a single claim, viz., his wrongful dismissal on June 21, 1979, which event is within four months of the commencement of this proceeding. In fact, however, his petition raises at least two claims, viz., that he was automatically entitled to tenure as a preliminary hearing officer upon the reclassification of his position, and, that, even assuming the proper imposition of a probationary term, his dismissal was in bad faith. There are two separate and distinct grievances, and petitioner's failure to pursue a timely challenge to the imposition of the probationary term bars the assertion of that claim. (See *Matter of Sabot v City Civ. Serv. Comm.,* 23 Misc 2d 200, affd 11 AD2d 927, mot for lv to reargue den 11 AD2d 991.)

Nor does the record support petitioner's claim that the Division of Parole acted in bad faith. His services were terminated because he lacked the necessary ability and temperament for the new position. Graber was thoroughly familiar with petitioner's performance from the time petitioner first came under his direct supervision on July 20, 1978 when petitioner was temporarily appointed to the position of preliminary hearing officer, civil service grade 24, until April 26, 1979, when he was permanently appointed to the new position subject to the satisfactory completion of a term of probation. During this period of temporary appointment Graber, through various channels, learned that petitioner had difficulty in properly conducting preliminary hearings and that he was unsuitable for the position.[4] His performance revealed a lack of understanding of the concept of probable cause and the proper procedures for conducting a probable cause hearing. He found that petitioner vacillated between two unacceptable extremes. He would find probable cause where none existed, and, when admonished, would then swing in the opposite direction and find a lack of probable cause when, in fact, it did exist.

Accordingly, when in March, 1979, the three preliminary hearing officer positions received noncompetitive approval from the Department of Civil Service and the Governor, Graber decided not to appoint petitioner to the permanent position and so advised him. Petitioner, however, requested another opportunity to demonstrate his qualifications for the appointment. Graber acceded to petitioner's request only because of his years of voluntary service and appointed him to the permanent position, subject to an 8 to 26 week term of probation.

Petitioner's performance failed to improve, and it rather quickly became apparent to Graber that the appointment had been a mistake. Petitioner's behavior again demonstrated his failure to understand or appreciate the proper manner in which to conduct a preliminary hearing. As permitted by law, petitioner's services as a probationary

---

4. Graber did exercise some informal supervision over all employees of the Department of Correctional Services who were conducting hearings as early as November, 1977. He observed deficiencies in petitioner's performance at that time but believed that these deficiencies could be overcome with professional and proper guidance.

preliminary hearing officer were terminated after eight weeks and one day, and he was restored to his former position as a senior parole officer, civil service grade 22.

The decision to restore petitioner to his senior parole officer title was neither arbitrary nor capricious, but was based on Graber's opportunities to observe and learn of petitioner's performance as a preliminary hearing officer. The decision was made in good faith and was based solely on petitioner's inability to perform satisfactorily. "The employment of a probationary appointee may be terminated * * * without a hearing and without reasons being stated and, in the absence of any allegation or demonstration that the termination was because of constitutionally impermissible reasons or prohibited by statute or policies established by decisional law, courts will not interfere with the discretion of the appointing officer unless the action complained of was arbitrary and capricious". (*Matter of Talamo v Murphy,* 38 NY2d 637, 639, citing cases.)

Accordingly, the judgment appealed from should be reversed, on the law, without costs or disbursements, and the petition dismissed.

SANDLER, J. P., CARRO, BLOOM and FEIN, JJ., concur.

Order, Supreme Court, New York County, entered on June 30, 1980, and judgment of said court, entered on October 22, 1982, unanimously reversed, on the law, without costs and without disbursements, the judgment vacated, and the petition dismissed.