OPINION OF THE COURT
Geoffrey J. O’Connell, J.
Petitioner brings this action pursuant to CPLR article 78 to compel respondent to reinstate him as an employee. Petitioner contends that respondent wrongfully terminated his employment. Respondent contends that petitioner was terminated because he did not fulfill the requirements necessary to continue his employment in the time allotted to do so.
FACTUAL SETTING
The petition contends that Robert Barnes was hired by respondent, the Board of Cooperative Educational Services of Nassau County (BOCES), on or about May 22, 1995 in the position of "cleaner/bus driver”. The petition contends that to qualify for such position Robert Barnes was required to obtain a commercial driver’s license (C.D.L.) by June 30, 1996. Petitioner asserts that he obtained a C.D.L. within the required time frame, but was nevertheless discharged. He offers a letter dated May 14, 1996 from Martin Lupson, Employment Manager, which notified him that he was being terminated effective June 30, 1996 because of his failure to become a "19A certified” driver within the required time frame.
Respondent offers an internal memorandum dated March 8, 1995 in which James F. Wilde requested authority to hire a "driver-cleaner” to replace an employee who had retired. Respondent also submits what is represented to be the specifications for the position classified as "cleaner-bus driver”. The job specifications include the following "special requirement”:
"Possession of a valid New York State Driver’s License with no convictions for moving violations during the past year and appropriate for the type of vehicle to be operated. In addition, drivers must be at [sic] least 21 years of age.
"Note: Candidates must satisfy all requirements of Article 19-A of the New York State Vehicle and Traffic Law. In addition, candidates must satisfy the requirements for School Bus Driver set forth in the Rules and Regulations of the New York State Commissioner of Education.”
Article 19-A of the Vehicle and Trafile Law is entitled, "Special Requirements for Bus Drivers”. It includes section *404 509-d which requires employers to have a job applicant undergo a medical examination and to investigate the prospective employee’s driving record, employment history and criminal record, if any, before employing a new bus driver. A commercial driver’s license and article 19-A certification are distinct. The definition of and requirements for a C.D.L. are contained in article 19, not article 19-A, of the Vehicle and Traffic Law. The two articles are interrelated to the extent that section 501-a (4) (iv) of article 19 defines "commercial motor vehicle” to include a "bus” as defined in section 509-a (1) of article 19-A. Vehicle and Traffic Law § 509-a (1) amplifies the section 142 definition of "school bus” in article 1 of the Vehicle and Traffic Law. Vehicle and Traffic Law § 142 defines "school bus” to mean: "Every motor vehicle owned by a public or governmental agency or private school and operated for the transportation of pupils, children of pupils, teachers and other persons acting in a supervisory capacity, to or from school”. While the driver must apply for and obtain a C.D.L. before operating a commercial vehicle (Vehicle and Traffic Law § 509 [1], [2]), it is the employer motor carrier who is responsible for compliance with article 19-A. (Vehicle and Traffic Law § 509-h.)
Respondent’s Employment Manager, Martin Lupson, avers that petitioner was hired in May of 1995 as a part-time cleaner with the understanding that he would be hired to fill the vacant "cleaner/bus driver” position if he met the job specifications by June 30, 1996. An internal BOCES form entitled "Personnel Transaction Sheet” reflects the hiring in May of 1995 with a "Special Note” which provides: "To be reassigned as Driver/ Cleaner upon 19A approval.” According to Mr. Lupson, petitioner was reassigned as a full-time cleaner effective September 22, 1996 as reflected in another "Personnel Transaction Sheet” which bears the "Special Note”: "Pending approval as Driver/Cleaner (19A).” Mr. Lupson avers that he learned from petitioner in September of 1995 that petitioner had yet to initiate the process of securing an article 19-A certification because he could not afford the $139.50 in fees. Lupson allegedly reminded petitioner that his then position was only temporary and informed him that reimbursement was available for the fees. Respondent asserts that petitioner failed to take the steps necessary to enable article 19-A certification by June 30, 1996 and was accordingly discharged.
In a reply affidavit petitioner initially contends that he was unaware of the necessity of article 19-A certification prior to *405 May 14, 1996. Nevertheless, he obtained a C.D.L. license which would permit him to operate a minivan by June 30, 1996. He contends that on June 21, 1996, he furnished BOCES. with all the forms it required to secure article 19-A certification, but that they were rejected. Petitioner also alleges, however, that he was prevented from taking a necessary road test (see, Vehicle and Traffic Law § 501-a [5]; 15 NYCRR 3.5) because he was disabled from working and on workers’ compensation from April 10, 1996 through June 30, 1996.
Respondent contends that petitioner was told of the necessity for article 19-A certification at the outset and again when he was given the full-time appointment in September 1995. Respondent provides affidavits from its BOCES employees, including petitioner’s supervisors, who state that they explained the job requirements to petitioner in May 1995. They claim that they explained the Department of Motor Vehicles’ application process, including the necessity of article 19-A certification, and gave petitioner the forms which had to be completed to process his application, including the application, the fingerprint cards and the blank letters of references. Respondent’s representatives affirm that they told petitioner to fill these out as soon as possible and return them to the Department of Motor Vehicles as it "could take many months” to process the article 19-A applications. Respondent contends that in September 1995 the supervisors reminded petitioner of his need to satisfy the requirements for his permanent employment as soon as possible. Gerry Schmidt, who was the recipient of the directive to assist petitioner with the application process, avers that he met with the petitioner and petitioner said that he understood the requirements and was going to begin the process as soon as he had the money for the applicable fees. Mr. Schmidt allegedly informed petitioner that respondent would reimburse him for the application fees.
Respondent acknowledges that on May 14, 1996 it informed petitioner that his temporary employment was ending on June 30, 1996 because of the failure to obtain article 19-A certification. Respondent contends that as of that date petitioner had not returned the appropriate forms to BOCES to process the Department of Motor Vehicles application by June 30, 1996. Respondent alleges that even if petitioner then submitted all of the appropriate forms, BOCES still could not have obtained article 19-A certification by June 30th, because it takes the Department of Motor Vehicles three to four months to process such applications.
*406 As noted, on or about June 21, 1996, prior to the last date of petitioner’s employment, petitioner obtained a C.D.L. with endorsements, and returned all of the required forms and paper work for a Department of Motor Vehicles article 19-A certification to BOCES. As of that date petitioner possessed a C.D.L. license with endorsements "N & P” and restrictions "K & N2”. While a C.D.L. license so endorsed and restricted would permit petitioner to operate a bus (Vehicle and Traffic Law § 501 [2] [b] [iv]; § 104), the bus would have to have a designed adult seating capacity of less than eight. (15 NYCRR 3.2 [c] [3].) Moreover, such a license would not authorize respondent to permit petitioner to operate a school bus without article 19-A certification. (Vehicle and Traffic Law § 509-h.)
Respondent acknowledges that Vehicle and Traffic Law § 509-d (2) (b) allows an employer who has undertaken all procedures specified in that section preliminary to article 19-A certification of a new driver to employ the individual as a conditional school bus driver for 90 days while awaiting replies. Respondent asserts, however, that the Nassau County Civil Service Commission will not permit it to utilize conditional school bus drivers.
DISCUSSION
The civil service system for selection of public employees on merit is established by article V, § 6 of the New York State Constitution and implemented by the Civil Service Law. The position of cleaner-bus driver to which the petition seeks to have petitioner restored is classified as a noncompetitive position which means that pursuant to Civil Service Law § 42 (1), the Civil Service Commission has determined it: "to be not practicable to ascertain the merit and fitness of applicants by competitive examination.” Petitioner does not allege that he ever received a temporary appointment as a cleaner-bus driver pursuant to Civil Service Law § 64 nor a provisional appointment pursuant to Civil Service Law § 65. Rather the documentary evidence establishes that he was hired as a part-time cleaner effective May 22, 1995 and then as a full-time cleaner effective September 22, 1995.
Petitioner’s claim to the position of cleaner-bus driver rests upon BOCES’ conceded promise to employ him in that position provided he obtained the qualifications by June 30, 1996. At no time on or before June 30, 1996 was petitioner an article 19-A certified driver or authorized by law to operate a school bus. Petitioner’s service for little over a year as a cleaner could not *407 entitle him to a permanent appointment in a different title. (See, Matter of Montero v Lum, 68 NY2d 253, 259-260; Matter of Village of Nissequogue v Suffolk County Dept. of Civ. Serv., 77 NY2d 915, 917; Matter of D’Amico v Nassau County Civ. Serv. Commn., 208 AD2d 532 [2d Dept 1994].)
Petitioner contends, however, that he had done all that he could to secure the article 19-A certification and that respondent caused the delay which made it impossible to satisfy the job qualifications by the deadline. While petitioner may have done all he could to meet the qualifications for the position, he did not do all that was required of him. By his own admission, he had not taken a required road test prior to June 30, 1996 because of a work-related disability. Assuming that the position of cleaner-bus driver is subject to a probationary term pursuant to Civil Service Law § 63, even had petitioner been appointed he could have been removed during such probationary term, "without a hearing and without a statement of reasons in the absence of any demonstration that dismissal was for a constitutionally impermissible purpose or in violation of statutory or decisional law”. (Matter of York v McGuire, 63 NY2d 760, 761.) As a mere candidate for appointment, petitioner is certainly not entitled to greater rights than a probationary appointee would possess. Yet, petitioner fails to allege any facts tending to establish that his failure to receive the appointment was due to causes unrelated to his qualifications or job performance as a cleaner or that it was motivated by bad faith. (See, Matter of Beacham v Brown, 215 AD2d 334 [1st Dept 1995].)
In a supplementary affirmation, petitioner’s counsel, for the first time, asserts that petitioner is entitled to be restored to employment as a cleaner. To support this claim petitioner submits a letter from the Executive Director of the Nassau County Civil Service Commission indicating that the Commission’s records reflect that from September 22, 1995 through June 30, 1996 petitioner was employed in the job title "Temporary Cleaner”. Temporary appointments are governed by Civil Service Law § 64 which limits their duration. Moreover, as already noted, a temporary appointment, whether voluntarily undertaken (Matter of Pollack v Bahou, 102 AD2d 286, 293 [1st Dept 1984]) or improperly extended (Matter of Village of Nissequogue v Suffolk County Dept. of Civ. Serv., 77 *408 NY2d 915, 917, supra), cannot ripen by the mere passage of time into a permanent appointment.
The petition is dismissed.