In the Matter of FRED A. HEALEY, Respondent, against JOHN BAZINET, Mayor of the City of Glens Falls, et al., Constituting the Board of Public Safety of said City, Appellants.

Reargued October 6, 1943; decided December 8, 1943.

*C. E. Fitzgerald* and *Thomas J. McCarthy* for appellants. The petitions are insufficient and fatally defective, in that it affirmatively appears from the allegations thereof and the supporting papers, that petitioner did not occupy a position *de jure* under the civil service at the time of his dismissal. (*Matter of DeSalvo* v. *Murray,* 262 N. Y. 573; *People ex rel. Hannan* v. *Board of Health,* 153 N. Y. 513; *Matter of Walsh* v. *Patterson,* 239 App. Div. 757; *Matter of Meehan* v. *Flaherty,* 119 App. Div. 128.) The petitions must be dismissed, as it affirmatively appears that the position of special policeman is not within the scope of the Civil Service Law. (*Palmer* v. *Board of Education,* 276 N. Y. 222.) Employees without civil service status may be summarily dismissed. (Civil Service Law, § 22, subd. 2, L. 1940, ch. 834; *Palmer* v. *Board of Education,* 276 N. Y. 222; *Matter of Hilsenrad* v. *Miller,* 284 N. Y. 445; *Koso* v. *Greene,* 260 N. Y. 491; *Matter of Scahill* v. *Drzewucki,* 269 N. Y. 343.) There is no basis for petitioner's theory that section 66 of the Glens Falls Charter has been repealed by the general statute law of the State. The relief granted by the Appellate Division was improper in that it exceeds that permitted by section 23 of the Civil Service Law, requiring deduction of outside compensation. The position to be held in the event of reinstatement should be specified.

*Frank Hurley* for respondent. Section 66 of the Charter limiting the number of permanent policemen, and section 75, granting power of summary removal, have been repealed by general statutes. (Unconsolidated Laws, L. 1935, ch. 901, § 846; L. 1940, ch. 834; *People ex rel. Fleming* v. *Dalton,* 158 N. Y. 175; *People ex rel. O'Connor* v. *Brady,* 49 App. Div. 238; *People ex rel. Tate* v. *Dalton,* 158 N. Y. 204; *Koso* v. *Greene,* 260 N. Y. 491; *People ex rel. Leet* v. *Keller,* 157 N. Y. 90.) Petitioner received a permanent appointment to a position in the competitive class and had satisfactorily completed an uninterrupted term of more than six years before he was summarily removed. (Civil Service Law, §§ 9, 14; *Matter of Voll* v. *Helbing,* 256 App. Div. 44; *Matter of Schaefer* v. *Rathmann,* 237 App. Div. 491; *Matter of Eagan* v. *Livoti,* 262 App. Div. 851;

*Matter of Camfield* v. *Mealy,* 288 N. Y. 149; *Matter of Rick* v. *Board of Education,* N. Y. L. J., December 15, 1934, p. 2410, 245 App. Div. 729; *Matter of Burch* v. *Finegan,* N. Y. L. J., February 13, 1936, p. 782, 248 App. Div. 561, 272 N. Y. 676; *Matter of McNeles* v. *Board of Supervisors,* 173 App. Div. 411, 219 N. Y. 578; *McGuillicuddy* v. *Civil Service Comm.,* 133 Cal. App. 782.) At the time of petitioner's dismissal, his name was on a valid eligible civil service list covering his position. (*Brown* v. *Craig,* 209 App. Div. 11.)

THACHER, J. By act of the Legislature in 1908 (ch. 29), the city of Glens Falls was incorporated under a charter which became effective March 13, 1908. The establishment of a Police Department was provided for in two sections of this charter: section 66 limited the appointment of permanent policemen to one for each 1,500 inhabitants and section 75 provided for special policemen to be appointed by the Board of Public Safety and to be removable at the pleasure of this Board. These sections read as follows: " § 66. Appointment of police force. — For the purpose of providing a permanent and effective police force, it shall be the duty of said board of public safety, as soon after their appointment as possible, to select from the electors of the city, and appoint by warrant of appointment bearing the signatures of a majority of said commissioners, and to be immediately filed with the city clerk, as many permanent policemen as they may deem necessary, not to exceed one for each fifteen hundred inhabitants of said city, as shown by the last preceding state or national enumeration of the corporation of Glens Falls, except as hereinafter otherwise specified, and as vacancies occur to fill the same in the same manner. And said board shall from said number of policemen appoint a chief of police through whom said board may promulgate rules, regulations and orders to the police force, and who shall have the immediate direction and control of said force; subject, however, at all times to the rules, regulations and orders of said board or of its president as authorized by the board, and such chief of police and policeman appointed in the manner aforesaid, may hold his respective office during good behavior or until he becomes incapacitated or until the board shall decide such chief of police or policeman has become incompetent and

inefficient and cause his removal after due trial as herein provided.''

'' § 75. Power to appoint special police.—The board of public safety shall also have power to appoint special policemen, who shall hold their office by virtue of such appointment for such period as such board shall direct, and shall be subject to the provisions of this act, and may be removed at the pleasure of said board. Such special policeman shall forthwith take the oath of office, and shall thereupon become vested with all powers and· shall discharge all the duties of policemen under this act and the statutes of this state, subject to such limitations and restrictions as said board shall fix and prescribe; such special policemen shall receive such fees and compensation as may be allowed to them by said board of public safety, or as otherwise hereinbefore provided.''

Neither of these sections expressly provides for competitive examinations, but as required by the Constitution and section 14 of the Civil Service Law, competitive examinations were held and the number of positions authorized in the permanent force under section 66 of the Charter were filled by the appointment of candidates from an eligible list graded upon the results of the examination.

Thereafter others who had passed a competitive examination — twelve in number, including the petitioner — were appointed special policemen pursuant to the authority of section 75 of the Charter. All the men thus appointed were examined in conformity with civil service requirements and a list was certified containing the names of the persons passing the examination. The appointments were made from among the three highest men on the list. Upon his written application, petitioner was appointed a special policeman by action of the Board of Public Safety on August 2, 1935, to serve during the pleasure of the Board.

The list upon which his name appeared and from which he was appointed was a list of those eligible for appointment to the '' Police Bureau '' graded upon the results of an examination '' of candidates for an eligible list from which may be chosen Patrolman in the Police Department.'' Thus the examinations were advertised and no distinction was made in the examination of patrolmen who became members of the limited

permanent force and those who became special policemen. Indeed there was no reason for any distinction at all because the duties and powers of both officers were defined by section 75 as precisely the same. For more than six years the petitioner served as a special policeman performing the same duties as a member of the regular force. By Local Law No. 2 of Glens Falls, effective October 31, 1941 (Local Laws, 1941, p. 181), section 66 of the Charter was amended so as to permit the appointment of one permanent patrolman for each 700 inhabitants. Thereafter, on December 15, 1941, the Board of Public Safety summarily removed petitioner from his position as special policeman as of November 11, 1941, and on January 2, 1942, appointed all but one of the special policemen remaining in the municipal service as " regular policemen."

Petitioner brought this proceeding to compel his reinstatement to the position of patrolman, and Special Term dismissed his petition. The Appellate Division, however, reversed, granted the prayer of the petition and directed that petitioner be paid his salary from the time of the attempted separation from the service.

There can be little doubt that the petitioner was serving in the competitive class of the civil service of the city of Glens Falls. Every position for which it is practicable to hold competitive examinations necessarily falls within the competitive class. (*Matter of Andresen* v. *Rice,* 277 N. Y. 271.) It was practicable to conduct examinations for positions in the local police force in the city of Glens Falls. The petitioner was examined in a competitive examination, as were others who were appointed either as special or permanent policemen. Nor was his appointment as a special policeman a temporary or provisional appointment which under the Civil Service Law could be made without selection from an eligible list or in disregard of standing on such a list (Civil Service Law § 15; *Koso* v. *Greene,* 260 N. Y. 491, 494; *Matter of Hilsenrad* v. *Miller,* 284 N. Y. 445.) On the contrary, the position was one created by section 75 of the City Charter which in no way suggests the length of the term or that the service is to be temporary. The term was indefinite, and terminable at the pleasure of the Board. The limitation of section 66 of the Charter upon the number of permanent policemen made it necessary to continue the employ-

ment of the petitioner and other special policemen until after section 66 had been amended. This was not a temporary condition. It was fixed by law and continued until the law was changed. Temporary and provisional appointments, within the meaning of the Civil Service Law and of the decisions which have dealt with them, may only be continued for brief periods, which could not exceed four months when petitioner was appointed. His service was continued in accordance with the law for more than six years.

Section 14 of the Civil Service Law provides: " Appointments shall be made from the eligible list *most nearly appropriate* for the group in which the position to be filled is classified, and a new list shall be created for a stated position or group of positions *only* when there is no appropriate list existing from which appointment may be made." (Italics ours.)

The powers and duties of patrolmen in the city of Glens Falls, whether serving as members of the permanent force or as special policemen are precisely the same (L. 1908, ch. 29, § 75). It follows that under the provisions of section 14 of the Civil Service Law appointments made to the permanent force or as special policemen could properly be made from the same list. This was done. The list as certified did not refer either to special policemen or to members of the permanent staff except in a parenthetical clause to the effect that the names were not certified for appointment to the permanent force, no doubt because there were no vacancies in the permanent staff. The Municipal Civil Service Commission, however, certified the list as " an eligible list for appointment to the Police Bureau of your department ".

Having been appointed a special policeman from an appropriate eligible list of those rated highest in an open competitive examination conducted by the Municipal Civil Service Commission, petitioner was serving in a position in the competitive class of the Civil Service in a city of the State, that is to say, the position of special policeman in the city of Glens Falls. From this position he was summarily removed by the Board of Public Safety on November 11, 1941, without notice of charges and without being afforded a hearing.

By enactment effective April 28, 1940 (L. 1940, ch. 834) it was provided: " A policeman serving in the competitive class

of civil service in any city, county, town or village of the state, any provision of law, rule or regulation to the contrary notwithstanding, shall not be removed from his position except for incompetency or misconduct shown after a hearing upon due notice upon stated charges, and with the right to such policeman to be represented by counsel at such hearing and to a judicial review in accordance with the provisions of article seventy-eight of the civil practice act.'' Since this statute expressly overrides all provisions of law, rules or regulations to the contrary, the inconsistent provisions of section 75 of the Glens Falls Charter, authorizing summary removal by the Board of Public Safety, were thereby superseded and the petitioner could only be removed after hearing on notice and on charges, with the right to representation by counsel, as provided in the statute; consequently, his summary removal by the Board of Public Safety was unlawful.

We agree with the Appellate Division that the petitioner should be reinstated to the position from which he was unlawfully removed.

The order appealed from should be modified so as to provide that petitioner be reinstated to the position of special policeman, and that he be paid the compensation he would have received from November 11, 1941, to the date of his reinstatement, less the amount of compensation received from any other employment or occupation during such period.

The order of the Appellate Division should be modified in accordance with this opinion and as so modified, affirmed, with costs to the petitioner-respondent.

RIPPEY, CONWAY and DESMOND, JJ., concur; LEHMAN, Ch. J., LOUGHRAN and LEWIS, JJ., dissent on the ground that the petitioner was not ''serving in the competitive class of civil service in any city,'' within the meaning of the statute.

Ordered accordingly.