In the Matter of Jerome Ver Weire, Petitioner, against Albert D. Finch, as Supervisor and Commissioner of Police of the Town of Gates, et al., Respondents.

Supreme Court, Special Term, Monroe County, December 27, 1949.

*J. Paul Brennan* for petitioner.
*Charles B. Bechtold* for respondents.

VAN DUSER, J.  This proceeding is brought under the provisions of article 78 of the Civil Practice Act.  An order is sought directing the town board of the town of Gates, Monroe County, New York, to restore petitioner to his position as special police officer in that town.

The proceeding was instituted in the first instance by a stipulation of facts.  Upon those facts, as stipulated, the Justice of this court before whom the matter came for decision, ordered the respondents to reinstate petitioner, and directed that payment be made to him for the period during which, it was held, he had been wrongfully deprived of his position.

Upon appeal to the Appellate Division, the order was reversed and a new trial granted.  It was there held that the petitioner's rights under section 22 of the Civil Service Law depend upon whether his appointment in the first instance was in accordance with the Constitution and the Civil Service Law.  The stipulation submitted to the Special Term did not, in the opinion of the Appellate Division, contain sufficient facts to permit a determination as to the legality of his appointment.  (*Matter of Ver Weire* v. *Finch*, 274 App. Div. 1026.)  As a matter of fact, the manner of petitioner's appointment in the first instance was not considered by the prior Special Term Justice, for that particular phase of the matter was not presented to, nor argued before him.  Under the order of the Appellate Division, however, upon this retrial, the question as to whether the petitioner's appointment in the first instance was in accordance with the Constitution and the Civil Service Law is squarely presented for decision.

According to the stipulation of facts, on or about the 15th day of April, 1945, the petitioner was appointed a " special or temporary police officer " in the town of Gates, a second-class town as defined by the Town Law, at an annual salary of $550.  The appointment was approved by the Monroe County Civil Service Commission the same day.  The stipulation further discloses that on January 1, 1946, the petitioner was reappointed at an annual salary of $600, and on January 13, 1947, was again reappointed at the same salary.  The petitioner was not reappointed in January of 1948, but, according to the testimony taken upon this hearing, other policemen were then appointed.

The petitioner is an exempt volunteer fireman, and his contention in this proceeding is that he has been removed from the police department of the town of Gates without charges having been filed against him, and without a hearing, in violation of the provisions of law with reference thereto.

Under the provisions of section 158 of the Town Law, the Town of Gates being a town of the second class, " special policemen " are " temporary " police officers. A " special policeman ", whose appointment is thereby authorized, has all the power and authority conferred upon constables by the general laws of the State and such additional powers, not inconsistent with law, as shall be conferred upon them by the town board, and he shall " serve at the pleasure of the town board ". The petitioner has testified, in this proceeding, that his duties as a " special policeman " in the town of Gates are " the same as a policeman in the City of Rochester ". They are the same, according to his testimony, as in any of the other towns.

According to the rules of the Monroe County Civil Service Commission, organized pursuant to the provisions of the Civil Service Law, a special policeman in the town of Gates is classified as being in the " non-competitive " class. No competitive examination was ever conducted, or had, for the position, and this petitioner has never taken any *competitive* examination, if, in fact, *any* examination whatsoever, for the position. Under date of April 13, 1945, the town board of Gates, through its then supervisor, nominated the petitioner " for the non-competitive position of police ", and attached to that nomination was what is said in the " nominating paper " to be " an application of the appointee for the position from which you may judge as to the applicant's qualifications for appointment ". The application itself set forth at the most such information as might be required to determine as to whether the applicant was qualified *to take an examination*. It recited that the information requested, on one of its pages, " will be used in passing upon your qualifications for *admission to the examination* ", " Candidates will be fingerprinted at the *time of examination*", " Receipt of *notice to appear for,* or actual participation in, *the examination* is not to be interpreted as an indication that the *candidate* has been found to meet fully the announced minimum requirements ". (Emphasis supplied.) In any event, he never took any competitive examination, and his appointment to the position was approved by the commission as a noncompetitive position, without any competitive examination, unless the application, though referring to " an " examination *to be had* thereafter, can legally be called " the " examination required. It may be noted, however, in that connection, that the information given the commission on the application fails to give the information, or certificate, required by rule XIX to be furnished, or as to which the applicant is to be examined to

determine his qualifications for appointment to a noncompetitive position.

But in any event, in *Matter of Andreson* v. *Rice* (277 N. Y. 271–272, 273) the Court of Appeals, by its then Chief Judge wrote, " In every civil service case we must start with the provision of the State Constitution (Art. V, § 6), which cannot be repeated too often, as it is the groundwork upon which all legislation on the subject is built. It steers the course which the Legislature must follow: ' Appointments and promotions in the civil service of the State, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive. * * * Laws shall be made to provide for the enforcement of this section. * * * The fundamental purpose running through our civil service provisions is that, so far as practicable, positions in the State service shall be filled by competitive examinations. Non-competitive appointments are the exception and not the rule."

Without question the present Civil Service Law was passed to carry out this provision of the Constitution, as was pointed out by Chief Judge CRANE with reference to the Civil Service Law as it then existed. (See, also, Civil Service Law, § 14.) The Town of Gates is a civil division of the State, to which reference is made in the section of the Constitution referred to (*Chittenden* v. *Wurster,* 152 N. Y. 345, 354), and the Monroe County Civil Service Commission gains its authority from the Civil Service Law, provision for the enforcement of which is found in the quoted section of the Constitution, and its rules and regulations must of necessity, as stated, be in accordance with constitutional provisions.

In *Palmer* v. *Board of Education* (276 N. Y. 222) in referring to section 6 of article V, of the Constitution, above-quoted, the court stated at page 226: " By placing this provision in the Constitution the People of the State have declared in unmistakable terms that merit, ascertained as therein provided, shall govern appointments and promotions in the public service, and have thus formulated and announced the public policy of the State. No administrative officer may violate the provisions of the Constitution, and no court may sanction a violation. Administrative officers may at times through inadvertence disregard a mandate of a statute or even of the Constitution. When redress is sought in the courts for an alleged wrongful discharge or

removal of an employee of the State or one of its civil divisions, the court, too, may fail to note that the employment was illegal from its inception, unless the legality of the employment is challenged by the defendant. An employment which in its inception violates the provisions of the Constitution is illegal and against public policy, regardless of the good faith of the parties. It is the duty of the appropriate administrative officers of the State or its civil division to discontinue an illegal employment when they note its illegality, and if rights based upon such employment are asserted in the courts, the legality of the appointment should not go unchallenged by public officers; but regardless of whether the legality is challenged or not, a court must refuse to sanction such an employment which violates the mandate of the Constitution whenever the illegality becomes apparent to it. In such case the defense cannot be waived by the defendant.''

It is claimed here, that if petitioner was appointed to a temporary position under the provisions of subdivision 2 of section 158 of the Town Law, by the terms of that same section, he served '' at the pleasure of the town board,'' but that if his appointment was a '' civil service appointment '' to a position in the '' noncompetitive '' class, such appointment was in violation of the provisions of the Constitution hereinbefore cited, and that in such a situation this court must '' refuse to sanction such an employment ''.

It seems to me that the termination of petitioner's employment cannot be successfully challenged in either event, although it is hard to see how it can be said that petitioner's appointment was a '' temporary appointment '' in view of the provisions of subdivision 3 of section 15 of the Civil Service Law. His service covered the period from April, 1945, to January, 1948, more than two and one-half years, at an *annual* salary. The appointment was not a '' temporary appointment '', but rather to a '' temporary position '' and to a position which had been placed by the Monroe County Civil Service Commission in the '' non-competitive '' class. It follows then that the decisive question here, is as to whether or not the placing, by the County Civil Service Commission of the position of '' special officer '' in the town of Gates, in the noncompetitive class was a violation of section 6 of article V, of the Constitution.

Can it be said that it was not practicable to ascertain the merit and fitness of applicants for the position of special police officer in the town of Gates by an examination, and that it was

not practicable that such examination should be competitive? The petitioner himself, by his testimony on this proceeding, concedes that the duties of a temporary or special policeman in the town of Gates are "the same as a policeman in the city of Rochester". They are the same, according to his testimony as in any of the other towns. It is hard, therefore, to understand why, if competitive examinations are practicable for policemen in the other towns of Monroe County, and for policemen in other civil divisions of the State, they are not practicable for a "special officer" in the town of Gates, performing the same duties, enforcing the same laws, and under the same general obligations of service, and employed for over two and one-half years at an annual salary.

It has been found practicable to conduct competitive examinations for positions in local police offices in other civil divisions of the State. Competitive examinations have been held to be practicable for the appointment of State Police (*Matter of Andreson v. Rice, supra*), for the appointment of special police in the city of Glens Falls (*Matter of Healey v. Bazinet,* 291 N. Y. 430), for the appointment of patrolmen in the village of Freeport (*Matter of Rotheim v. Patterson,* 172 Misc. 353) and for the appointment of a constable in the town of Huntington (*Matter of Nenstiehl v. Town of Huntington,* N. Y. L. J., June 17, 1939, p. 2820, col. 4).

It seems to be clear, therefore, that if the appointment in this proceeding was a "civil service" appointment, it was not made in accordance with the provisions of the Constitution, and that having no legal rights as a result thereof, the petitioner was subject to removal at will. (*Matter of Gainey v. Village of Depew,* 257 App. Div. 918; *Matter of Scahill v. Drzewucki,* 269 N. Y. 343). Neither would the fact that the petitioner was twice reappointed invest him with any additional rights, (*Matter of Hilsenrad v. Miller,* 284 N. Y. 445, 451). Nor does the petitioner gain the benefits of section 22 of the Civil Service Law, he being an exempt fireman, for it is only when the position is not held in violation of section 6 of article V of the Constitution that section 22 is applicable. (*People ex rel. Hannan v. Board of Health,* 153 N. Y. 513; *Matter of Scahill v. Drzewucki, supra.*)

An order denying the petition may be submitted for signature.