OPINION OF THE COURT
Titone, J.
Following his termination without a hearing, petitioner commenced this article 78 proceeding seeking reinstatement to his former civil service position as a Youth Division Aide IV at the State Division for Youth Harlem Valley Secure Facility. The principal question presented in this proceeding is whether petitioner’s period of probationary service should be deemed to have commenced on the date he actually began working as a designated "temporary” employee or instead when he subsequently passed the required qualifying examination and was awarded permanent status. Because we conclude that a nonexempt temporary employee cannot attain permanent status and begin serving the probationary term without having first qualified for the position, we hold that the Appellate Division correctly measured petitioner’s probationary period from the date he passed his civil service examination.
*256 Petitioner was initially appointed as a part-time Youth Division Aide IV, a noncompetitive position, on October 27, 1982. Effective November 8, 1982, he was appointed to the same position on a full-time basis. On both occasions, the personnel action forms signed by the Facility Director indicated that the appointments were "temporary”. Petitioner actually began working for the agency on the date of his initial part-time appointment, although he had not yet taken and passed the required physical examination and agility test.
After some delay, those tests were scheduled to be conducted on January 13, 1983. Petitioner passed both tests and on March 24, 1983 was notified of his permanent appointment to the position of Youth Division Aide IV. The appointment was made effective January 13, 1983 and was subject to successful completion of a period of probationary service ending January 12, 1984.
During his employment at the Harlem Valley Secure Facility, petitioner’s supervisors found his performance less than satisfactory because of his inability to "maintain a professional distance from the residents”. As a result of his supervisors’ final negative evaluation, petitioner was terminated, without a hearing, on January 6, 1984. The decision to terminate petitioner was made by James Clancy, who was acting as the Facility Director while John Lum, the appointed Director, was on vacation.
In May of 1984, petitioner commenced the present proceeding for reinstatement and back pay.[1] He argued principally that his one-year probationary period had begun on October 27, 1982, the date of his initial appointment, and that having completed one year’s probationary service on October 26, 1983, he could not thereafter be terminated without a hearing. He also argued that his termination was unauthorized because Clancy, the facility’s Acting Director, had no power to remove him.
Special Term agreed in principle with petitioner’s arguments, although it cited November 8, 1982, the date of petitioner’s full-time appointment, as the point at which his probationary period commenced. Noting that the two-month and five-day delay in scheduling petitioner’s tests was attribut *257 able solely to the employing agency, the court concluded that the agency should not be permitted to defer the effective date of petitioner’s permanent appointment until he had passed the tests because to do so would, in effect, be to expand the one-year probationary period authorized by Civil Service Law §63. In so ruling, the court found it significant that after petitioner had been hired the agency had recognized that Youth Division Aides were being "disadvantaged by the prolonged probationary status” occasioned by the need to schedule a qualifying physical examination and, as a consequence, had promulgated a prospective rule authorizing its personnel office to adjust the affected employees’ probationary periods accordingly.[2] Additionally, the court rejected respondents’ contention that petitioner’s status was temporary, rather than permanent, before he had passed the examination, since, in its view, respondents had not satisfactorily established that a valid temporary appointment was made within the meaning of Civil Service Law § 64. Consequently, Special Term found that by January 6, 1984 petitioner was a permanent, nonprobationary employee who could not be terminated without a hearing. Accordingly, the court ordered him reinstated with back pay.[3]
On appeal to the Appellate Division, the judgment awarding reinstatement and back pay was reversed and the petition dismissed. The Appellate Division concluded that petitioner could not have attained permanent status before January 13, 1983, the date he passed his qualifying examinations, and that his previous temporary appointment "could not have ripened into a permanent appointment by that time”. Thus, the Appellate Division held, petitioner’s probationary period had not begun until January 13, 1983, and the agency was within its rights when it terminated him without a hearing less than a year from that date. We agree.
Under Civil Service Law §63 (1), the State Civil Service *258 Commission is authorized to provide for a period of probationary service, during which the employee may be summarily removed. The maximum probationary period for employees in petitioner’s position is one year, and its commencement is triggered by the employee’s "original permanent appointment” (4 NYCRR 4.5 [a] [1]; see, Civil Service Law § 63 [1]). The problem that disturbed the trial court here was the possibility of an appointing authority arbitrarily expanding an employee’s probationary period by first designating the employee temporary and then postponing the qualifying examination that would lead to "original permanent appointment”. Whether such a problem may be remedied by relating an employee’s permanent status back to his initial temporary appointment is the question we now address.
We begin, as we must, with NY Constitution, article V, § 6, which furnishes the guiding principle for all civil service appointments. That provision states that "[appointments and promotions in the civil service of the state and all of the civil divisions thereof * * * shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive”. The purpose of this provision was to replace the spoils system with a system of merit selection and to protect the public as well as the individual employee (Wood v City of New York, 274 NY 155, 161; Matter of Social Investigator Eligibles Assn. v Taylor, 268 NY 233, 237).
Although the constitutional mandate expressed in article V, § 6 has been characterized as self-executing (see, People ex rel. McClelland v Roberts, 148 NY 360), the Legislature has enacted a specific statutory scheme for its implementation. Under sections 44, 50 and 61 of the Civil Service Law, open competitive examinations must be held for "all positions for which it is practicable to determine the merit and fitness of applicants by competitive examination”. Even in instances where a competitive examination is not "practicable”, appointments to classified civil service positions outside the exempt and labor classes may be made only "after such non-competitive examination as is prescribed by the state civil service department or municipal commission having jurisdiction” (Civil Service Law § 42 [1]). The Legislature has also made provision for temporary appointments without examinations where the need is "urgent and important”, but has expressly *259 limited the duration of such appointments to three months, except in certain narrowly defined situations (Civil Service Law § 64). Such stringent limitations are necessary to ensure adherence to the clear constitutional preference for merit selection (see, Matter of O’Reilly v Grumet, 308 NY 351).
While it would have been preferable for respondents to have explained in the trial court why they had an "urgent and important” need to hire petitioner on a temporary basis, we need not consider here whether his temporary appointment, which lasted less than three months, was valid under section 64. Whether petitioner’s initial appointment as a temporary was proper or improper, petitioner was not, and could not have been, appointed to a permanent position in the noncompetitive class, since he had not yet taken and passed the examinations prescribed for that position at the time of his initial appointment (see, Civil Service Law § 42 [1]; New York State Division for Youth, Change in Youth Division Aide Series Qualifications, Dec. 10, 1981). Indeed, because he had not passed the examination deemed "practicable” by the appointing authority, his permanent appointment would have violated article V, § 6 of the Constitution.
Furthermore, it is because of the inviolate constitutional mandate that we cannot by judicial fiat convert what was necessarily a temporary appointment into a permanent one (see, Amico v Erie County Legislature, 36 AD2d 415, 424, affd 30 NY2d 729). It is well settled that even an unlawfully extended period of temporary service cannot ripen into a permanent appointment (e.g., Matter of Board of Educ. v Nyquist, 31 NY2d 468; Matter of Hilsenrad v Miller, 284 NY 445; Matter of Agress v Board of Educ., 86 AD2d 869, affd 57 NY2d 755).[4] Nor can an appointee’s successful completion of the qualifying examination after an initial temporary appointment operate retroactively to convert that temporary appointment into a permanent one ab initia (cf. Matter of Marasco v *260 Morse, 9 Misc 2d 296, affd 263 App Div 1063, affd 289 NY 768).[5]
This court has previously held that a person appointed permanently after successful completion of a civil service examination acquires no additional status or service credit by virtue of his prior incumbency in the position as a temporary appointee (Koso v Greene, 260 NY 491). Even more to the point, we recently upheld the termination of an employee whose status was deemed converted from temporary to permanent under a Civil Service Department rule only after he had submitted a required form (Matter of Marlow v Tully, 63 NY2d 918). Although in Marlow we explicitly addressed only the propriety of the rule itself, implicit in our decision upholding the employee’s termination was our recognition that subsequent fulfillment of the requirements for permanent status cannot alter an employee’s initial status as a temporary.
We note that we can perceive no imperative policy considerations warranting a reexamination of the time-tested rule that temporary appointments, however invalid, cannot ripen into permanent ones. To be sure, agencies may from time to time abuse their authority to make temporary appointments under Civil Service Law §64 and may even, in extreme cases, attempt to use that authority to revive precisely the type of croneyism that article V, § 6 of the Constitution was adopted to prevent.[6] However, deeming an improperly appointed temporary employee to be a permanent employee is not an appropriate or even an effectual remedy for such abuses, since doing so would merely perpetuate the initial wrong. Moreover, a more direct remedy exists in the form of an action to enjoin a public employer from making recurring and extended tem *261 porary appointments without good cause in violation of the Civil Service Law (see, Matter of O’Reilly v Grumet, supra).
Finally, although we recognize that the rules governing temporary appointments may lead to harsh results in particular cases, we cannot allow that consideration to override the firm public policy of merit selection set forth in the Constitution. We would also note that employees who accept temporary appointments obtain a distinct benefit: employment before the prescribed requirements for the position are met. They are thus in a more advantageous position than they would have been had the appointing agency simply delayed their appointments until a qualifying examination could be scheduled. Accordingly, any perceived unfairness resulting from prolonged untenured status may well be illusory.
Since we conclude that petitioner was not and could not have been appointed to a permanent position until he had passed his physical examination and agility test, as he did on January 13, 1983, it follows that his one-year period of probationary service could not have been completed before a year from that date (Civil Service Law § 63 [1]; 4 NYCRR 4.5 [a] [1]). Consequently, his employer, the State Division for Youth, was entitled to terminate him without a hearing during that one-year period, provided it did so in good faith and without a constitutionally impermissible motive (see, Matter of York v McGuire, 63 NY2d 760; Matter of Talamo v Murphy, 38 NY2d 637).
It remains for us to consider petitioner’s alternative contention that his termination was invalid because the Acting Facility Director who made the dismissal decision, James Clancy, had no power to do so. The contention rests on the assumption that the State-wide Director of the Division, Peter Winfield, had not, in fact, specifically delegated his statutory power to discharge employees to the local Facility Directors and that, even if he had, the Facility Director in this case, John Lum, had not and could not have delegated such authority to James Clancy, his Acting Director. Neither of these assumptions withstand scrutiny.
Petitioner acknowledges that the State-wide Director, Win-field, had the power to hire and fire, as well as the authority to delegate those powers to subordinates (see, Executive Law § 500 [1], [2]). He argues only that the provision in the Division’s Policy and Procedure Manual authorizing Facility Directors to appoint employees at petitioner’s grade level was *262 not an effective delegation of the authority to terminate such employees. This argument is unpersuasive, however, because the provision carried with it an implicit delegation to Facility Director Lum of the power to remove.
As a public officer, Lum, in turn, had the authority to designate a deputy to act and exercise all of his powers in his absence (Public Officers Law § 9). The uncontroverted affidavits submitted at Special Term unquestionably establish that Lum, in fact, had designated James Clancy, his deputy, to act in his absence. Moreover, there is no indication that Clancy had assumed the position of Acting Director without proper authorization from his principal.
In sum, petitioner was validly removed from his position as a Youth Aide IV on January 6, 1984. The Acting Director who made the decision was properly vested with the authority to remove him, and a hearing was unnecessary because the decision was made during petitioner’s probationary period. Accordingly, the order of the Appellate Division should be affirmed, with costs.

. Since respondents did not interpose the Statute of Limitations for article 78 proceedings as an affirmative defense, we do not consider whether the proceeding was timely commenced (see, Matter of Pollack v Bahou, 102 AD2d 286, 294, appeal dismissed 63 NY2d 773).

. Inasmuch as this rule was applicable only to employees hired after August 25,1983, petitioner was not able to avail himself of its benefits.

. Special Term based its conclusion that petitioner was entitled to a hearing on the terms of the governing collective bargaining agreement rather than on Civil Service Law § 75 which, by its terms, is inapplicable to employees in the noncompetitive class with less than five years’ tenure (see, Civil Service Law § 75 [1]). We thus have no occasion to consider here the extent to which section 75 or the due process clauses of the State and Federal Constitutions protect a noncompetitive civil service employee who has completed the probationary period but has served for less than five years in the position (see, Matter of Voorhis v Warwick Val. Cent. School Dist., 92 AD2d 571).

. This court has recognized an exception to the rule in cases where an employee, although designated temporary, was actually appointed from a list compiled from the results of a competitive examination and was continued in the position for an extended period (Matter of Healey v Bazinet, 291 NY 430; see also, Matter of Battaglia v Morton, 272 App Div 372, affd 299 NY 746). Such an exception does not run afoul of the constitutional requirement of merit selection because it confers permanent status only on those who have actually qualified in accordance with the constitutional strictures. Since petitioner did not so qualify on the date of his initial "temporary” appointment, however, this exception does not apply to him.

. This rule applies to employees holding temporary noncompetitive positions who simply pass the required examination, as well as to those holding temporary competitive positions whose score on the examination places them among the top three applicants (cf. Matter of Wadsworth v Garnsey, 62 AD2d 1141).

. In holding that petitioner may gain no additional civil service status by virtue of his temporary appointment, we do not intend to convey a lax or tolerant attitude toward the abuse of temporary appointments, including those made for a period of less than three months. The plain language of Civil Service Law § 64 (1) requires public employers to justify such appointments in terms of an "urgent and important” need. This court has not yet had the opportunity to consider the degree of "urgency and importance” that is required for a legitimate temporary appointment of less than three months’ duration, and we need not do so here.