■ In the Matter of ANDREW D. REIS, Appellant-Respondent, v NEW YORK STATE HOUSING FINANCE AGENCY, Respondent-Appellant. ANDREW D. REIS, Respondent, v NEW YORK STATE HOUSING FINANCE AGENCY EMPLOYEES ASSOCIATION, Appellant.—Order and judgment (one paper), Supreme Court, New York County (Harold Tompkins, J.), entered November 3, 1986, insofar as it denied the motion of respondent New York State Housing Finance Agency Employees Association (Association) to dismiss the petition against it, severed and converted the action against the Association to a plenary action and ordered the Association to serve an answer, unanimously affirmed, without costs. Petitioner's appeal from those parts of the order which granted the motion of respondent New York State Housing Finance Agency (Agency) pursuant to CPLR 3211 (a) (7) to dismiss the petition as against it and adjudged that causes of action numbers 1 through 12 are severed and dismissed, is dismissed as superseded by the appeal from the *order* granting reargument, without costs.

Order, Supreme Court, New York County (Harold Tompkins, J.), entered March 17, 1987, which granted petitioner's motion for reargument of the dismissal of the petition against

the Agency and upon reargument adhered to the court's original determination, unanimously modified, on the law, to affirm the grant of reargument and upon reargument reverse the dismissal of the petition pursuant to CPLR 3211 (a) (7) and reinstate the petition, and the matter is remanded for further proceedings consistent with this memorandum, without costs.

Order, Supreme Court, New York County (Karla Moskowitz, J.), entered February 25, 1987, which, *inter alia,* dismissed the Association's second and fifth affirmative defenses, unanimously affirmed, without costs.

Petitioner Andrew Reis commenced employment with the New York State Housing Finance Agency on April 12, 1979 as an assistant program coordinator and he served in that capacity for over five years in temporary provisional status.

Petitioner had completed and filed the competitive examination for permanent appointment to the post on October 3, 1983. The list announcing that petitioner had passed was published on December 18, 1984.

On January 18, 1985, petitioner received an interoffice communication from Howard Shookoff, the Agency's associate personnel administrator, advising that:

"The Agency is now in the process of attempting to give all provisional Program Coordinators or Assistant Program Coordinators permanent appointments as required by Civil Service Law * * *

"Because of the need to move quickly the Personnel Office will automatically appoint Agency Program and Assistant Program Coordinators on a permanent basis as soon as possible. Please keep in mind that we plan to retain the services of every Program and Assistant Program Coordinator."

Subsequent to this communication, petitioner was notified that his permanent appointment was to become effective January 21, 1985. Later, the payroll department noted that it could not process the requisite paperwork by that date and that the permanent appointment would not formally commence until February 7, 1985.

Throughout this entire period, petitioner continued to perform his duties as assistant program coordinator, just as he had during his more than five years as a provisional employee.

On February 7, 1986, the Agency notified petitioner that it was extending his probationary period until March 19, 1986.

On March 4, 1986, the Agency notified petitioner that it was

terminating his employment "[a]fter consideration of various factors related to your employment, as well as the Agency's needs".

Following such notification, petitioner commenced the instant CPLR article 78 proceeding alleging that his probationary period actually expired before the Agency terminated his employment, and that the termination, at the time he was a protected, permanent employee, was therefore arbitrary and capricious and unlawful.

The Agency did not answer but instead moved to dismiss the petition as against it for failure to state a cause of action pursuant to CPLR 3211 (a) (7). In this procedural context, the IAS Judge granted the Agency's motion to dismiss, based on a finding that petitioner's probationary period had not yet expired when he was terminated. Since we disagree with the lower court's finding on this seminal issue, we deny the CPLR 3211 motion to dismiss and remit the case for further proceedings.

The key issue in petitioner's case against the Agency revolves around whether petitioner had completed his 52-week probationary period at the time that he was dismissed on March 4, 1986. The Agency contends that petitioner commenced his probationary status on February 7, 1985, the date of official appointment by the Agency's payroll department, and that the probationary period extended beyond February 7, 1986 because of petitioner's absences. Department of Civil Service rule 4.5 allows a probationary term of 52 weeks and provides that absences may not be counted as part of the time served in determining the computation of the 52-week period. (4 NYCRR 4.5 [f].) Petitioner was absent for 36.6 days following February 7, 1985, hence the agency contends that the probationary period was extended to March 28, 1986. Accordingly, the Agency contends that since petitioner was a probationary employee at the time of his discharge, he was not entitled to a hearing and could be fired so long as there was no bad faith or arbitrariness. *(Matter of Talamo v Murphy,* 38 NY2d 637.)

The IAS court held that petitioner's probationary status should be measured from the February 7 payroll appointment date, and that counting the days absent, the probationary *period had yet* to expire at the time he was dismissed. The court also held that the same result obtained even if, assuming, arguendo, the January 21 appointment date were to be used.

One month after this decision, the Court of Appeals issued its ruling in *Matter of Montero v Lum* (68 NY2d 253), holding that the civil service probationary period of an employee already performing the duties of the job by virtue of provisional status should be measured from the date he passed his civil service examination. Following the issuance of this decision, petitioner herein therefore moved for reargument, claiming that the date of the publication of the results of the examination, which is the date that the agency learned of his passing—i.e., December 18, was the date upon which his probationary period commenced and that such probationary period had expired by the time that he received the letter of dismissal. Without extensive comment, the IAS court adhered to its original determination, stating that it still found that petitioner's probationary period had commenced February 7, 1985, since it interpreted *Montero* as only "requiring the passing of the competitive examination for a permanent position."

We disagree and find that the decision in *Montero (supra)* requires a reversal here. The issue in *Montero* was whether a civil service employee's period of probationary service should be deemed to have commenced on the date he actually began working as a designated employee or on the date he passed the required qualifying examination. The court explicitly held that the probationary period should be measured "from the date he passed his civil service examination." (68 NY2d, *supra,* at 255.)

The expressed rationale for the probationary period is "to enable the appointing officer to ascertain the fitness of the probationer and to give the probationer a reasonable opportunity to demonstrate the ability to perform the duties of the office". *(Tomlinson v Ward,* 110 AD2d 537, 538, *affd* 66 NY2d 771.) This is intended to afford the employer an opportunity to scrutinize an employee's performance and qualifications during that period with the awareness that at the end of the probationary period the employee will attain permanent, protected status. The Civil Service rules (4 NYCRR 4.5), recognizing that the employer should be afforded a full 52-week period for this purpose, eliminate from the probationary term any absences during the period. Concomitantly, the one-year probationary period should begin to run once the agency learns that the employee is qualified to become permanent, which, under the rationale of *Montero (supra),* is the time when the agency learns that the employee has passed the examination,

and not the artificial date adopted by the employer for its own bookkeeping purposes.

We would note, moreover, that the Agency can hardly deny that it had more than a full and fair opportunity to evaluate petitioner's qualifications both during the more than one year that followed the announcement of his passing of the test, as well as during the prior five-year period of "provisional" employment when he was performing the same duties in the same title that he performed once he was appointed a "permanent" employee. As a provisional employee already on the job, publication of the list confirming his successful completion of the qualifying examination served to trigger the running of the probationary period under the principles set forth in *Montero (supra)*.

In this case, using the December 18, 1984 date when the results of the test were published, and extending that period by the number of days petitioner had been absent in the year following that date, his probationary period expired before the notification of his termination on March 4, 1986. Accordingly, we find that at that time petitioner Reis was already a permanent civil service employee entitled to all of the rights and protections of such status.

We have examined the other points raised on this appeal and cross appeal and find them without merit.

Parenthetically, we would note that we join in expressing concern at the seemingly common practice of misusing the provisional status. *(See, Matter of Montero v Lum,* 68 NY2d, *supra,* at 262 [Kaye, J., concurring].)* The practice of hiring provisional or temporary employees appears to be a means of avoiding the grant of civil service protection to those who would otherwise deserve it were the positions formally labeled "permanent". The abuse of the system is particularly apparent in a situation such as this, where, after more than five years as a provisional employee, petitioner is terminated as a result of the allegedly "closer scrutiny" given by the Agency because the employee will be eligible for the benefits incidental to permanent civil service status. Such treatment would, on its face, appear to be arbitrary or in bad faith. Concur—Kupferman, J. P., Ross Kassal, Ellerin and Smith, JJ.