OPINION OF THE COURT
John V. Vaughn, J.
This is a special proceeding to review the determination of the respondent, Suffolk County Department of Civil Service *383 (hereinafter referred to as department), which refused to certify that portion of the petitioner’s payroll which included the corespondent police officers.
Respondent police officers have cross-petitioned for an order: (1) directing that they be paid pending the outcome of this proceeding; (2) for permission to conduct discovery; and (3) for a jury trial of any issues raised in this proceeding.
Respondent department has cross-moved for an order dismissing the respondent police officers’ cross petition upon the ground that it fails to state a cause of action upon which relief might be granted, and also to dismiss corespondents’ request to be paid pending the outcome of these proceedings.
Respondents, Dennis McHugh and Roger Leigh, were originally appointed by resolution of the Village of Nissequogue as "acting police officers” in November 1982 and July 1984, respectively. It would appear that Dennis McHugh was appointed prior to that date since there is a letter of commendation in October 1981 concerning his activities as a police officer. Nevertheless, each respondent was sworn in as a "police officer” (not acting police officer) and performed the duties of that office in the village. However, neither of the respondents had been appointed to the position of police officer from any "eligibility list” prepared and certified by the respondent department.
There was evidence that each of the respondents had served on the police department of other municipalities prior to his appointment in the Village of Nissequogue. There was further evidence that each of the respondents had taken and passed an examination for police officer in the past. However, one of the respondents had not scored high enough on that exam to be reached for appointment, and the other respondent had not qualified under the "agility” or "height” requirements then applicable. After their appointments, the respondents received extensive training as police officers and rendered meritorious service in the apprehension of criminals which was appropriately recognized in writing by the Suffolk County Police Department. There appears to be no dispute to the fact that the respondents performed their duties well and were exemplary police officers.
There does not appear to have been any payroll submitted by the Village of Nissequogue for certification to the respondent department between 1971 and May 1989. However, in September 1984 and, again in September 1986, the depart *384 ment advised the Mayor of the village, in writing, to submit its payroll. Moreover, in September 1986, the then Village Attorney was advised orally and in writing that its police officers were not lawfully hired.
On November 28, 1986 the Comptroller of the State of New York advised the village in writing that it had not submitted its payroll to the Suffolk County Civil Service Department as required under section 100 of the Civil Service Law. Shortly thereafter, in February 1987, the local State Senator and Assemblyman introduced legislation which would have allowed the village to retain the service of the corespondent police officers. A similar bill was reintroduced in 1989, but neither legislation passed.
On July 10, 1989, following submission of the village payroll to the respondent department, the department refused to certify the payroll as to the two corespondent police officers upon the ground that there was an eligible civil service list for the position of police officer. Thereafter, on July 21, 1989, the village confirmed this fact with the respondents, directed its attorney to commence this proceeding, and agreed to place the respondents’ salary in an interest-bearing escrow account pending the outcome of the proceeding. It appears that the July 10, 1989 notice was the first notification that the police officer respondents had concerning any of these difficulties.
The State Constitution provides that appointments and promotions in the civil service of this State and its civil divisions shall be made according to merit and fitness to be ascertained as far as practicable by competitive examination (NY Const, art V, §6). The purpose of this provision was to replace the spoils system with a system of merit selection to protect the public as well as the individual employee (Wood v City of New York, 274 NY 155, 161; see also, Matter of Montero v Lum, 68 NY2d 253, 258).
The Civil Service Law was enacted to effectuate the mandate of this constitutional provision. The Civil Service Law provides that appointments to a position in the competitive class must be made from 1 of the 3 persons certified by the appropriate Civil Service Commission as standing highest on the eligible list (Civil Service Law § 61). The original appointment is made to a probationary term (Civil Service Law § 63). In addition, any appointee to a village police force must meet age, education and height, weight and physical fitness requirements set by the Municipal Police Training Council (Civil Service Law § 58).
*385 The papers before the court establish that the respondent police officers were not appointed from any eligibility list certified by the respondent department. This is tacitly acknowledged by the petitioner village, in its attempts to have special legislation enacted to protect the employees. Nevertheless, the respondent officers were appointed to the position of police officers in 1982 and 1984, and have rendered exemplary service to the village since that time. Moreover, while the records of the respondent department submitted to the court do not indicate any knowledge of those appointments by the department, it is clear that as early as 1986 the respondent was aware of the illegal appointments in the Village Police Department.
The law further provides that no disbursing officer of any civil division of the State shall approve or pay any compensation for personal services to any person in the classified service unless the payroll bears the certification of the Civil Service Department to the effect that the persons named therein are employed in their position in accordance with the law (Civil Service Law § 100 [1]). Moreover, it is the duty of the appointing officer to notify the Civil Service Department of all appointments (Civil Service Law § 97 [1]). Finally, it is a misdemeanor to willfully pay anyone a salary where the Civil Service Department has refused to certify the payroll (Civil Service Law § 101).
It appears that the Village of Nissequogue did not submit any payrolls for certification until June 1989. At that time the respondent department refused to certify their payment to the respondent police officers. The department maintains that its roster cards (Civil Service Law § 97 [2]) did not contain the appointments of the respondent police officers by the village, but it was equally clear that the department was aware of the illegal appointments as early as 1986 when it advised the then Village Attorney of that fact. Despite this knowledge, the department took no action (see, Civil Service Law § 102).
In 1984 section 100 of the Civil Service Law was amended to provide: "5. Limitation upon the certification of payrolls. Solely for the purposes of this section and in the absence of fraud, an employee having completed the applicable probationary period and holding a position in the classified service of a civil service division by appointment or promotion for at least three years shall be presumed to have been duly appointed or promoted. After such time, neither the state civil *386 service commission nor a municipal commission shall withhold certification of such employee on a payroll or voucher by reason of a violation of this chapter or rules made pursuant thereto. The provisions of this subdivision shall not apply in cities with a population of one million or more.”
The department argues that this provision is unconstitutional if it is interpreted literally to permit an initially improper or void appointment to ripen into a valid, permanent legal appointment. In lieu thereof, and in order to preserve its constitutionality, the department argues that the statute should be construed to require (1) that the initial appointment be made at least from an eligibility list certified by the department and/or (2) that the amendment should not apply unless and until the department has had an opportunity to review the appointment. Therefore, it argues, when the village failed to submit the payroll for certification, fraud must be presumed and the amendment by its own language found inapplicable.
There is a strong presumption of the constitutionality of any act of the State Legislature (I.L.F.Y. Co. v City Rent & Rehabilitation Admin., 11 NY2d 480; People v Smith, 63 NY2d 41; McKinney’s Cons Law of NY, Book 1, Statutes § 150). The respondents’ arguments are appealing, but neither persuasive nor compelling. Applying the statutory amendment to the facts in this case will not violate the constitutional mandate providing for appointments on the basis of merit and fitness.
The amendment to the statute, by its own language, applies only to the section of the law in which it is contained, i.e., certification of payroll. It provides that the department may not refuse to certify a payroll more than three years after the employee’s appointment. In a sense it is similar to the limitation in section 50 of the Civil Service Law which limits the time period in which the department may review and question the background qualifications of a civil service worker. It does not purport to limit the right of anyone to draw a suspect appointment to the attention of the Civil Service Commission (letter of Assemblyman Gary Proud dated June 29, 1984, in support of the amendment) nor does it purport to prevent other means of removal or enforcement available under the law.
Moreover, the court finds no need to read the requirement of initial appointment from an eligibility list into the plain *387 language of the statute. In addition, while the argument that the department must have knowledge of the unauthorized appointment through some means such as the submission of a payroll before the statute can be applied would ordinarily be persuasive, it is not compelling in this action. Here, the department was aware of the failure to file the payroll as well as the unlawful appointment, but did nothing (see, Civil Service Law § 102). During this period the respondent police officers were unaware of any problems. It appears that this is the very situation which the amendment was designed to correct.
Accordingly, the motion to dismiss is denied and the petition to review is granted to the extent that the department may not refuse to certify the payroll. The cross petition of the respondent employees is granted to the extent that they request payment and is otherwise denied.