In the Matter of ROBERT RIGIA, Respondent, v RICHARD KOEH-LER, as Commissioner, Department of Correction, City of New York, et al., Appellants.

First Department, April 9, 1991

APPEARANCES OF COUNSEL

*John D. Patten* for respondent.

*Helena Lee* of counsel *(Kristin M. Helmers* with her on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for appellants.

## OPINION OF THE COURT

Ross, J.

On this appeal, the Department of Correction (Department) seeks to reinstate a determination, dated September 18, 1986, finding Mr. Robert Rigia medically not qualified for appointment as a Correction Officer due to "Hearing Loss—Both ears".

In 1982, Mr. Rigia took a civil service (CS) examination, exam No. 1027, for the position of Correction Officer in the Department, and placed number 7,141 on the eligible list. While awaiting appointment Mr. Rigia took a second CS examination, exam No. 2153, also for the position of Correction Officer, and placed number 2,281 on that eligible list. Thereafter, in April 1984, Mr. Rigia was notified that he had been considered, but not selected for appointment from the exam No. 1027 eligible list. When, in December 1985, Mr. Rigia was further notified that he had been considered, but not selected for appointment from the exam No. 2153 eligible list, he filed a complaint with the Department's Equal Employment Opportunity (EEO) Office, alleging that he had been denied appointment, as a result of discrimination, based upon his prior arrest history, relating to two arrests for the crime of assault, and three arrests for the crime of burglary.

Conciliation proceedings concerning this discrimination charge resulted in a "Memorandum of Understanding" (Memorandum), dated May 5, 1986, executed by Mr. Rigia and Ms. Gail Boyd (Ms. Boyd), who, at that time, was the Department's Assistant Commissioner of EEO. In pertinent part, this Memorandum states: "Robert Rigia will be hired for the position of Correction Officer. Document collection will be updated. Mr. Rigia will go into the academy at the conclusion of document collection".

Before Mr. Rigia was to enter the Department's training academy, on July 11, 1986, the Department ordered him to undergo a preappointment medical examination, and same indicated that Mr. Rigia's hearing levels fell below the mini-

mum level required under the Department's medical standards, which had been promulgated in conjunction with examination No. 2153, as amended in June 1986. When Mr. Rigia was retested on two subsequent occasions, each time he failed to meet the hearing standard. Significantly, Mr. Rigia testified that one of those follow-up tests was administered by his own physician.

After the Department's Medical Director determined that Mr. Rigia was not qualified for the position of Correction Officer, by notice of Personnel Director action, dated September 18, 1986, Mr. Rigia was informed by letter that he had been medically disqualified for appointment because of "Hearing Loss—Both ears".

On October 27, 1986, Mr. Rigia appealed the Department's determination to the New York City Civil Service Commission, and they rejected same as untimely. Thereafter, in January 1987, Mr. Rigia (petitioner) instituted, pursuant to CPLR article 78, a proceeding against the Department and the New York City Personnel Department (respondents) to compel them to appoint him to the position of Correction Officer. By memorandum decision, dated October 23, 1987, an IAS court stated, *inter alia,* that, although Mr. Rigia had failed to exhaust his administrative remedies, precluding article 78 relief, the petition raised the separate issue of the Memorandum's enforcibility as a contract, and therefore that court referred the issue to trial.

Following the joinder of issue, a bench trial was held, resulting in an order and judgment (one paper), entered January 29, 1990, directing respondents to appoint petitioner to the position of Correction Officer, as of the date of that Memorandum, May 5, 1986. Respondents appeal.

NY Constitution, article V, § 6, requires that "[a]ppointments * * * in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness". In *Matter of Montero v Lum* (68 NY2d 253, 258 [1986]) the Court of Appeals held "[t]he purpose of this provision was to replace the spoils system with a system of merit selection and to protect the public as well as the individual employee".

Legislative implementation of that constitutional provision is found, in part, in Civil Service Law § 50 (4) (b), which permits a municipal Civil Service Commission, such as the New York City Civil Service Commission, to refuse, after

examination, to certify an eligible "who is found to have a physical * * * disability which renders him [or her] unfit for the performance of the duties of the position in which he [or she] seeks employment".

At the instant trial, Mr. Alan Vengersky (Mr. Vengersky) testified that he has been the Department's Director of Personnel since 1984, and he is "responsible for the full array of Personnel functions including recruitment selection * * * and the functions of the Applicant Investigation Unit". Further, Mr. Vengersky testified that, in order to be appointed to the CS position of Correction Officer in the Department, "one has to pass a written exam and pass the background investigation which includes an investigation of character, pass the medical and have a psychological report that the Department deems satisfactory".

While petitioner does not dispute that the Department's hearing standard for appointment as a Correction Officer satisfies the constitutional provision of "merit and fitness", *supra*, he does contend that the Department violated the settlement Memorandum, when the Department ordered him to undergo another medical test in July 1986, since his hearing had been previously tested, as part of the preappointment medical examination he had taken more than 2½ years previously, in January 1984.

According to the testimony of Mr. Vengersky, the reason the petitioner was ordered to take another hearing test, was "the policy and practice of the Department * * * to subject every one to a second medical if the first medical took place over a year before the appointment". Our examination of the record indicates that petitioner has not offered any persuasive evidence to controvert the testimony of Mr. Vengersky relative to this departmental policy and practice. Although Ms. Boyd, who on behalf of the Department, prepared and negotiated the Memorandum, testified that she did not have knowledge of such a departmental policy and practice, she admitted that she had nothing to do with the actual hiring of Correction Officers, and she was not a hiring professional like Mr. Vengersky. We find that this departmental policy and practice is logical, and in the public interest, since same guarantees that an applicant will not be appointed, who, in the intervening period of more than a year from his or her last preappointment medical, has had a significant change in his or her physical condition, such as loss of a limb, or eye, or hearing.

Further, we find that to adopt the petitioner's position, that the Memorandum automatically requires his appointment as a Correction Officer, regardless of his physical condition, more than two years after his last departmental preappointment medical examination, would violate the constitutional requirement of "merit and fitness", *supra,* which is intended to protect the public *(Matter of Montero v Lum, supra)*. Further, if the Memorandum were to be deemed a contract, it is important to note that we have held "[i]t is familiar law that contracts which are directly violative of or have for their object the violation of statutes enacted for the protection of the public are generally held illegal (1 New York Law of Contracts, § 397)" *(Robitzek v Reliance Intercontinental Corp.,* 7 AD2d 407, 409 [1st Dept 1959], *affd* 7 NY2d 1041 [1960]).

This court notes that the respondents-appellants also raise on appeal the issue of whether the appointment of the petitioner herein is prohibited by NY Constitution, article V, § 6 and the Civil Service Law § 56, due to the expiration of the exam No. 2153 eligibility list.

Civil Service Law § 56 states, in pertinent part, that the duration of an eligible list, resulting from a CS examination is "not less than one nor more than four years". The Court of Appeals in *Matter of Deas v Levitt* (73 NY2d 525, 531, *cert denied* — US —, 110 S Ct 324 [1989]) held that the "appointment of the individual from a constitutionally valid expired list violates Article V, § 6 of the NY Constitution".

The CS eligible list of the subject examination No. 2153 was established in August 1984, and in accordance with the Civil Service Law § 56, *supra,* same expired in August 1988. Accordingly, the eligible list had expired well before the IAS court entered its order on January 29, 1990.

Our review of the record indicates that the respondents-appellants have been dilatory in raising this issue, since they did not refer to it anywhere in their pleadings, and, in fact, the first mention of that issue in the record occurred during respondents-appellants' counsel's summation at the bench trial, when he merely exclaimed "the list is dead", without giving any legal argument to support that conclusion.

We recognize that the holding in *Matter of Deas v Levitt (supra)* concerning the effect of the expiration of a CS list, is the law of this State. Since we have decided to reinstate the Department's determination, finding the petitioner medically not qualified, we need not reach the merits of the issue

relative to the expiration of the list. However, if we did reach that issue, the holding of *Matter of Deas v Levitt (supra)* would furnish another ground barring petitioner's appointment.

Accordingly, judgment, Supreme Court, New York County (Robert F. Doran, J.), entered January 29, 1990, which, after a bench trial, directed that respondents appoint petitioner to the position of Correction Officer, with the respondent New York City Department of Correction, as of May 5, 1986, is reversed, on the law and on the facts, judgment is vacated, and determination of the Department is reinstated, finding petitioner medically not qualified for appointment as a Correction Officer, without costs.

SULLIVAN, J. P. (concurring). I concur in the majority opinion only to the extent it holds that, in light of petitioner's failure to meet the Department of Correction's medical standards, his appointment to the position of Correction Officer on the basis of the May 5, 1986 memorandum of understanding would violate the constitutional requirement of "merit and fitness" (NY Const, art V, § 6). In my view, the claim by respondents, introduced for the first time on appeal, that under *Matter of Deas v Levitt* (73 NY2d 525, *cert denied* — US —, 110 S Ct 324) the court is without power to direct petitioner's appointment because the civil service eligibility list on which his name appeared had expired before entry of the judgment directing said appointment misses the point. Petitioner's claim is entirely contractual, based on the unequivocal commitment set forth in the memorandum of understanding, which was entered into prior to the expiration of the eligible list. Petitioner was picked and, in effect, appointed from the list on the date of the execution of the memorandum of understanding, thereby rendering the list, as to him, irrelevant. The trial court implicitly recognized this fact when it directed that petitioner's appointment be retroactive to May 5, 1986. Thus, in the factual context of this case, the eligibility list's expiration is of no legal significance.

CARRO, J. (concurring in result only). After having passed two civil service qualifying examinations for the position of Correction Officer, but nevertheless not being appointed, petitioner brought a discrimination complaint before the Equal Employment Opportunity (EEO) Office of the Department of Correction. In a memorandum of understanding, signed by an EEO attorney of the Department of Correction after obtaining approval from the Department's Personnel Office, it was

agreed that petitioner "will be hired for the position of correction officer" and "will go to the Academy", subject only to "document collection".

Although petitioner had already passed a medical examination, and although nothing in the memorandum of understanding provided for an additional medical examination as a condition, petitioner was required to undergo a second medical examination pursuant to an unpromulgated, informal practice of the Department. Significantly, the Department had adopted a more stringent standard for minimal hearing requirements after the memorandum of understanding was executed by the parties. Petitioner's hearing was found deficient under the new standard, and he was rejected for employment solely on that basis.

It is my view that the Supreme Court was correct in concluding that the Department breached it's contractual obligation to hire petitioner, set forth in the memorandum of understanding, contrary to our State's policy favoring enforcement of stipulations of settlement (see, Hallock v State of New York, 64 NY2d 224, 230). I do not agree with the majority's conclusion that the memorandum of understanding was either directly violative, or had as its object the violation of a statute enacted for the protection of the public. The Department had an unpromulgated, informal practice of requiring an applicant to submit to a second medical examination if an earlier examination had taken place over a year prior to an appointment. This practice may indeed have a logical basis, but it was not embodied in a statute or regulation, and thus the Department may reasonably be deemed to have waived that requirement in the memorandum of understanding which did not require another medical examination as a condition for petitioner's appointment.

I nevertheless concur in the result reached by the majority on the basis of Matter of Deas v Levitt (73 NY2d 525, 529, cert denied — US —, 110 S Ct 324) which holds that appointment of a civil service applicant from an expired list is "a legal impossibility", violative of our State Constitution. Petitioner concedes that the eligible list herein expired by operation of law in August of 1988, long before entry of the Supreme Court's January 29, 1990 judgment directing respondents to appoint petitioner as a Correction Officer. Although the respondents did not raise this issue in their pleadings, or during trial except for the "list is dead" comment noted by the majority, an appellant may urge for the first time on appeal a

proposition of law which appeared on the face of the record, and which could not have been cured or avoided if brought to the attention of the court below *(Persky v Bank of Am. Natl. Assn.,* 261 NY 212, 218-219; *De Sapio v Kohlmeyer,* 35 NY2d 402, 404, n 2). Since the expiration of the eligible list by operation of law is a fact appearing on the face of the record, and the legal effect of that expiration could not have been cured or avoided by the petitioner, I agree with the majority's determination that the judgment of the Supreme Court must be reversed, and the determination of the Department reinstated.

ELLERIN and KASSAL, JJ., concur with ROSS, J.; SULLIVAN, J. P., concurs in a separate opinion; CARRO, J., concurs in the result only in a separate opinion.

Judgment, Supreme Court, New York County, entered on January 29, 1990, reversed, on the law and on the facts, the judgment vacated and the determination of the Department reinstated, finding petitioner medically not qualified for appointment as a Correction Officer, without costs.