OPINION OF THE COURT
 

 Titone, J.
 

 The issue presented in these two appeals is whether an
 
 *369
 
 arbitrator’s award requiring respondent Buffalo Board of Education to promote the highest-scoring bargaining unit member on a civil service eligible list as required by the terms of the parties’ collective bargaining agreement is void as violative of public policy in that it restricts the statutory discretion vested in the appointing authority under Civil Service Law § 61 to select one of the three highest-ranked candidates on an eligible list. We conclude that no strong public policy prohibits an appointing authority from agreeing through collective negotiations to give promotional preference to certain members of an eligible list where a probationary period precedes their permanent appointment.
 

 PCTEA I
 

 Respondent Board of Education for the Buffalo City School District and the Professional, Clerical, Technical Employees Association (PCTEA)
 
 [1]
 
 are parties to a collective bargaining agreement (CBA) covering the terms and conditions of employment of unit members effective July 1, 1991 through June 30, 1996. The CBA provides for the resolution of any "dispute which may arise between the parties involving the application, meaning or interpretation of the [CBA]” through a progressive grievance procedure which culminates in arbitration.
 

 On October 5, 1994, the Buffalo Municipal Civil Service Commission adopted a list indicating the existence of three vacancies for the promotional position of Associate Account Clerk with the Buffalo Board of Education. The highest-scoring candidate on the promotional eligible list for that position was Melvin Cross, an Account Clerk Typist and a member of the PCTEA. Four other PCTEA unit members followed Cross on the list.
 

 The Board passed over Cross in filling the three vacancies. Following the Board’s action, PCTEA filed a grievance on Cross’ behalf, contending that the Board’s failure to promote Cross violated article 22, § 1 (c)
 
 [2]
 
 
 *370
 
 and article
 
 [3]
 
 6* *3 of the CBA. The matter proceeded to arbitration. The parties stipulated that the question for arbitral resolution was whether the Board violated those specific provisions of the CBA in failing to promote Cross.
 

 The arbitrator ruled that the Board violated article 22, § 1 and article 36 of the CBA when it failed to promote Cross in the order of his placement on the eligible list to the Associate Account Clerk position. The arbitrator found that the minutes of a series of labor-management meetings held in 1981, 1985 and 1986 reflected the parties’ agreement to promote the first unit member on the eligible list, and ruled that this "explicit agreement of the parties became part of their contractual agreement” pursuant to article 36 of the CBA.
 

 The arbitrator also determined that the Board violated article 22, § 1 (c) of the CBA which affords employees on the eligibility list, "in order of their placement on the list,” the opportunity to choose an assignment preference from among the available positions. As a remedy, the arbitrator directed that Cross be appointed to the position of Associate Account Clerk, with retroactive compensation and benefits, and that Cross be afforded the opportunity to indicate his assignment preference for one of the three vacancies.
 

 Supreme Court granted PCTEA’s petition pursuant to CPLR 7510 to confirm the arbitrator’s award and denied the Board’s cross motion to vacate. The Appellate Division reversed, concluding that the CBA "improperly restricts respondent’s discretionary authority by requiring respondent to appoint the highest scoring unit member” on the eligible list (227 AD2d 940). Citing
 
 Matter of Economico v Village of Pelham
 
 (50 NY2d 120, 129), the Court ruled that a public employer may not surrender its " 'ultimate appointing authority’ ” through collective bargaining
 
 (supra,
 
 227 AD2d, at 940). Accordingly, the
 
 *371
 
 Court ruled that the award enforcing the agreement to appoint the top-ranked candidate violates public policy. We granted PCTEA’s motion for leave to appeal, and now reverse.
 

 PCTEA II
 

 In October 1994, one vacancy existed for the position of Senior Typist with the Buffalo Board of Education. The Buffalo Municipal Service Commission certified the names of four PCTEA unit members as eligible for the position. Christine Czosek, the highest-ranked PCTEA unit member on the list, was not offered the promotion.
 

 PCTEA filed a grievance protesting the Board’s failure to promote Czosek, alleging that the Board’s failure to appoint the top-ranked unit member was in direct violation of article 22, § 1 of the CBA. PCTEA claimed that the Board also violated article 31 of the CBA, entitled "Work Schedules and Standards”
 
 [4]
 
 and article 36, entitled "Maintenance of Benefits.”
 

 When the grievance procedures proved fruitless, PCTEA submitted the matter to arbitration on a stipulated question. The arbitrator sustained the grievance, finding that the Board’s action in bypassing Czosek violated the parties’ long-standing practice and agreement to promote the highest-ranked unit member on the eligible list, as memorialized in the minutes of a series of labor-management meetings. The arbitrator concluded that the past practice at issue "has the status of contractual language and must, therefore[,] be enforced.” Accordingly, the arbitrator directed that Czosek be promoted to the position of Senior Typist and compensated for lost wages and benefits.
 

 Supreme Court granted PCTEA’s petition to confirm the arbitrator’s award, and denied respondent Board’s cross motion to vacate it. The Appellate Division reversed and vacated the award. Unlike the panel in
 
 PCTEA I,
 
 the Court concluded that Civil Service Law § 61 "does not prohibit an appointing authority from agreeing to the method it will use in selecting among qualified candidates” (229 AD2d 914). However, the court concluded that an agreement to promote the highest scoring member must be "expressed and not implied or imposed by reason of past practice”
 
 (id.,
 
 at 915) and thus concluded that since no express CBA provision here required promotion of the highest-ranked PCTEA member, the arbitra
 
 *372
 
 tor’s award could not stand. Two Justices concurred in result only, and would have reversed for the reasons stated by the Appellate Division in
 
 PCTEA I.
 
 This Court granted PCTEA’s motion for leave to appeal, and we now reverse.
 

 Civil Service Law § 204 — the Taylor Law — empowers, and, in fact, requires a public employer to negotiate collectively with employee organizations and enter into written agreements governing the terms and conditions of employment (Civil Service Law § 204 [1], [2]). Additionally, public policy in this State favors arbitral resolution of public sector labor disputes
 
 (Board of Educ. v Bellmore-Merrick United Secondary Teachers,
 
 39 NY2d 167,
 
 171; Matter of Associated Teachers v Board of Educ.,
 
 33 NY2d 229).
 

 Thus, as a general proposition, "any subject with respect to terms and conditions of employment in controversy between a board of education and its teachers may be the subject of collective bargaining under the Taylor Law * * * and of consequent arbitration under a broad arbitration clause”
 
 (Matter of Union Free School Dist. No. 2 v Nyquist,
 
 38 NY2d 137, 143). Despite this broad mandate to collectively negotiate and arbitrate labor disputes, we have repeatedly concluded that "the scope of such permitted and encouraged bargaining and arbitration is limited by plain and clear prohibitions found in statute or decisional law and may be further restricted by considerations of objectively demonstrable public policy”
 
 (id.,
 
 at 143;
 
 see also, Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers’ Assn.],
 
 37 NY2d 614).
 

 This Court has cautioned that the public policy exception to the arbitrability of public sector labor disputes is narrow. Accordingly, an arbitral award may be set aside "[o]nly when the award contravenes a strong public policy, almost invariably involving an important constitutional or statutory duty or responsibility”
 
 (Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist.,
 
 45 NY2d 898, 899).
 

 The promotional practices of a public employer constitute a term or condition of employment that may be determined through collective bargaining under the Taylor Law
 
 (Matter of Apuzzo v County of Ulster,
 
 98 AD2d 869,
 
 affd
 
 62 NY2d 960). Accordingly, the provisions of the CBA at issue here, which relate to the use of preferences in the promotion of PCTEA members based on examination scores, concern a term or condition of employment, and thus would be a proper subject for col
 
 *373
 
 lective bargaining and subsequent arbitral resolution, in the absence of a prohibition in statutory or decisional law, or countervailing public policy
 
 (Matter of New York City School Bds. Assn. v Board of Educ.,
 
 39 NY2d 111).
 

 The school Board contends in each appeal that the discretion it is granted under Civil Service Law § 61 (1), which permits an appointing authority to select one of the three top-scoring candidates on a promotional eligible list, is a prohibited subject of bargaining. Thus, the Board argues that the arbitrator’s award upholding an agreement to limit that discretion by requiring appointment of the top-scoring candidate is void as violative of public policy.
 

 As a preliminary matter, we reject PCTEA’s contention that the Board waived its right to press the current claim that the arbitrator’s award violates public policy by stipulating to the issue to be presented to the arbitrator and participating in the arbitration without making a motion to stay that proceeding on public policy grounds. A motion to stay arbitration on public policy grounds would be appropriately sought "where the arbitrators could not grant any relief without violating public policy”
 
 (Matter of Port Wash. Union Free School Dist. v Port Wash. Teachers Assn.,
 
 45 NY2d 411, 417). However, such preemptive relief is usually "premature and unjustified”
 
 (id.,
 
 at 418) because arbitrators are " 'not strictly limited to remedies requested by the parties’ ”
 
 (id.,
 
 at 418, quoting
 
 Board of Educ. v Bellmore-Merrick United Secondary Teachers,
 
 39 NY2d 167, 172, supra) and their "broad power to fashion appropriate relief may therefore not be presumed in advance to necessarily entail public policy conflicts discernable in the abstract by the courts”
 
 (supra,
 
 45 NY2d, at 418). Thus, as here, a challenge to an arbitration award on public policy grounds may properly be raised in a motion to vacate or confirm the award
 
 (Hackett v Milbank, Tweed, Hadley & McCloy,
 
 80 NY2d 870, 871-872;
 
 Hirsch v Hirsch,
 
 37 NY2d 312, 315). Given that the arbitrator here may have fashioned an award that did not implicate the public policy concerns now raised by the Board,
 
 [5]
 
 a stay of arbitration on public policy grounds would have been premature
 
 (see, Matter of Babylon Union Free School Dist. v Babylon Teachers Assn.,
 
 79 NY2d 773, 774-775).
 

 Turning to the merits of the Board’s challenge to the arbitration award, we conclude that there is nothing in our
 
 *374
 
 State’s Constitution, the Civil Service Law or decisional law that prohibits an appointing authority from agreeing through collective negotiations on the manner in which it will select one of the top three qualified candidates from an eligible list for promotion. We begin our analysis with an examination of the policies embodied in the constitutional merit and fitness provisions and Civil Service Law § 61.
 

 Our State Constitution mandates that civil service appointments and promotions "shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive” (NY Const, art V, § 6). The competitive examination scheme "serves as the foundation of the merit system”
 
 (McGowan v Burstein,
 
 71 NY2d 729, 732). It was designed to protect both the employee and the public by replacing the spoils system with a system designed to ensure that civil service appointments and promotions were based on the qualifications of the candidate
 
 (Matter of Montero v Lum,
 
 68 NY2d 253, 258;
 
 see also, People ex rel. Qua v Gaffney,
 
 142 App Div 122, 126). As we have previously stated, the fact that New York was the first State to constitutionalize the merit and fitness requirement is "a reflection of our citizens’ insistence that competence, rather than cronyism, should determine civil service appointments”
 
 (McGowan v Burstein,
 
 71 NY2d 729, 733,
 
 supra).
 

 Although the constitutional merit and fitness provision has been recognized as "self-executing”
 
 (Matter of Montero v Lum,
 
 68 NY2d 253, 258,
 
 supra),
 
 the Legislature has enacted a number of statutes to implement the constitutional merit and fitness ant competitive examination requirements
 
 (see, e.g.,
 
 Civil Service Law §§ 44, 50, 51, 52, 61, 65, 73). That scheme includes Civil Service Law § 61 (1), which provides that competitive civil service appointments or promotions from an eligible list "shall be made by the selection of one of the three persons certified by the appropriate civil service commission as standing highest on such eligible list who are willing to accept such appointment or promotion.” Under Civil Service Law § 50, only candidates meeting certain minimum qualifications for the vacancy can be certified to take the competitive examination and placed on an eligible list. Together, "[t]he provisions of the State Constitution, the statutes, and the [Civil Service Commission] rules, requiring that appointments be made from among qualified people, pursuant to competitive examination whenever practical, are not intended to dictate the selection by appointing officials, but to limit the group from which
 
 *375
 
 the selection may be made to those who are qualified”
 
 (Matter of Delicati v Schechter,
 
 3 AD2d 19, 21).
 

 Pursuant to the so-called "one-of-three” rule, an appointing authority need not appoint or promote the highest-scoring candidate on an eligible list, but rather retains some discretion to select an appointee from within that limited field of three candidates
 
 (Matter of Andriola v Ortiz,
 
 82 NY2d 320, 324). The rule recognizes that "examination success cannot reveal any possible defects of personality, character or disposition which may impair the performance of one’s duties in a civil service position”
 
 (Matter of Cassidy v Municipal Civ. Serv. Commn.,
 
 37 NY2d 526, 529), and thus grants the appointing authority some leeway in making the selection by permitting it to consider an applicant’s personal traits.
 

 The Board contends, and the Appellate Division concluded in
 
 PCTEA I,
 
 that by agreeing to promote the highest-scoring PCTEA member on the promotional list, the Board has restricted its right to exercise the discretion it is afforded by Civil Service Law § 61 and thereby relinquished its "ultimate appointing authority”
 
 (cf., Matter of Economico v Village of Pelham,
 
 50 NY2d 120, 129,
 
 supra; Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,
 
 40 NY2d 774, 778). However, the questioned appointments are probationary for a period of 60 days under rule 17 of the Rules for the Classified Civil Service of the City of Buffalo, which applies here. Under rule 17, the appointing authority retains the discretion to terminate a probationary appointee during that period if his or her conduct or performance is not "satisfactory.” Thus, the probationary term provides the Board with a sufficient period of time to determine the qualifications of any appointee
 
 (Matter of Heslin v City of Cohoes,
 
 53 NY2d 903, 905).
 

 Indeed, as we explained in
 
 Matter of Albano v Kirby
 
 (36 NY2d 526, 531), the probationary term is a trial period employed "as a means of determining the merit and fitness of candidates.” It is useful because "[e]xperience had demonstrated that occasionally a candidate, who had done well on a civil service examination and even one whose education and experience normally indicated the potential capacity to perform satisfactorily, was found wanting in the actual execution of duties of the position”
 
 (id.,
 
 at 531). Thus, we concluded that probationary terms "serve to furnish the appointee with an opportunity to show his or her fitness and to provide a more acceptable and less embarrassing means of terminating the employment of an unsatisfactory appointee”
 
 (id.,
 
 at 531). Ac
 
 *376
 
 cordingly, given that the appointments here would only become permanent after the candidate’s satisfactory completion of the probationary term and that the Board may terminate a probationer during that period whose performance is unsatisfactory, the Board has retained sufficient ability to exercise its discretion in assessing those traits of the appointee that it may have initially disregarded in following the contractual preference.
 

 While the Board has relied on long-settled precedent providing that restrictions upon an appointing authority’s discretion afforded by the one-of-three rule may not be
 
 imposed
 
 by the Legislature or other external source
 
 (see, People ex rel. Balcom v Mosher,
 
 163 NY 32), that precedent is not controlling where, as here, the restrictions on the Board’s discretion are self-imposed
 
 (see, Matter of Heslin v City of Cohoes,
 
 74 AD2d 393, 399 [Herlihy, J., dissenting],
 
 revd on dissenting opn of Herlihy, J.
 
 53 NY2d 903,
 
 supra).
 
 No precedent of this Court suggests that a public employer may not voluntarily bargain with respect to the exercise of such discretion. On the contrary, this Court has concluded that a municipal employer may agree to give preference for the filling of vacancies to certain individuals without offending public policy
 
 (Matter of Port Wash. Union Free School Dist. v Port Wash. Teachers Assn.,
 
 45 NY2d 746;
 
 Matter of Apuzzo v County of Ulster,
 
 98 AD2d 869,
 
 affd
 
 62 NY2d 960,
 
 supra).
 

 Indeed, the dispositive point here is that the limitation on the Board’s discretion was the result of "a voluntary surrender by the appointing authority of the full range of possibilities available to it for the duration of the contract period”
 
 (Matter of Heslin v City of Cohoes,
 
 74 AD2d 393, 399-400 [Herlihy, J., dissenting],
 
 revd for reasons stated in dissenting opn of Herlihy, J.
 
 53 NY2d 903,
 
 supra).
 
 The fact that the restrictions on the appointing authority’s own discretion were self-imposed "demonstrates that the school board has [not] lost control over its negotiations with the association”
 
 (Matter of Niagara Wheatfield Adm’rs Assn. [Niagara Wheatfield Cent. School Dist.],
 
 44 NY2d 68, 74;
 
 see also, Matter of Port Wash. Union Free School Dist. v Port Wash. Teachers Assn.,
 
 45 NY2d 746, 748,
 
 supra).
 

 In the final analysis, the appointment of the highest-scoring candidate compelled by the collective bargaining agreement is consistent with the State’s strong public policy objective of appointing qualified civil servants who demonstrate merit as measured by their performance on a competitive examination,
 
 *377
 
 without regard to political or social influences. Because the appointees are required to satisfy a probationary term before their appointments become permanent, the Board will have a sufficient opportunity to assess other character traits that may have been unmeasurable by the competitive examination. Under these circumstances, the Board has not relinquished its ultimate appointment authority. Thus, we conclude that the arbitrator’s award in each matter was not violative of public policy and was thus impervious to further judicial review
 
 (Hirsch v Hirsch,
 
 37 NY2d 312, 316,
 
 supra).
 

 [6]
 

 Consequently, a reversal and reinstatement of the arbitral awards is warranted in both cases.
 

 Accordingly, the order of the Appellate Division in each case should be reversed, with costs, and the respective orders of Supreme Court, Erie County, reinstated.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine and Ciparick concur; Judge Wesley taking no part.
 

 In each case: Order reversed, etc.
 

 [1]
 

 . PCTEA is the duly recognized exclusive negotiating representative for an employee unit including all regularly scheduled, full- and part-time employees, other than managerial and confidential, essentially employed in professional, clerical and technical matters for the Buffalo City School District.
 

 [2]
 

 . Article 22, § 1 (c) provides:
 

 "In the case of promotion or whenever a new job classification is established or a permanent vacancy occurs, the position shall be filled in accordance with the Civil Service Rules of Procedure, and selections shall be-made from the appropriate eligibility list until the list of names is exhausted, which means that a given eligible list contains less than three (3) names of candidates. * * *
 

 
 *370
 
 "The employees on the eligibility list, in order of their placement on the list, shall be afforded the opportunity, where there are multiple openings, to indicate their preference of assignment to the Personnel Office. In the event the employee does not receive the preferred assignment the Personnel Office shall notify the employee of the reason.”
 

 [3]
 

 . Article 36 of the CBA, entitled "Maintenance of Benefits,” provides that "[a]ll terms and conditions of employment of employees in this unit now in effect which are not specifically provided for in this Agreement or which have not been replaced by provisions of this Agreement shall remain in effect for the duration of this Agreement, unless mutually agreed otherwise between the Board and the Union.”
 

 [4]
 

 . Article 31 provides that "[t]he Board agrees that any terms or conditions of employment contained in this Agreement, including work schedules, shall not be changed until negotiated with and agreed to by the Union.”
 

 [5]
 

 . For instance, the arbitrator may well have determined that no such agreement to appoint the highest-ranked PCTEA member on the eligible list had been incorporated into the CBA.
 

 [6]
 

 . The arbitrator in each case determined from the minutes of a series of labor-management meetings that the Board had agreed to limit its choice in making promotional appointments and that such limitations had been part of its past promotional practice. The arbitrator further determined that pursuant to article 36 of the CBA, this promotional practice had become a term or condition of employment that would remain in effect for the contract term, despite the fact that it was not expressly mentioned in the CBA. Contrary to the conclusion reached by the Appellate Division in
 
 PCTEA II,
 
 nothing about our decision in
 
 Matter of Andriola v Ortiz
 
 (82 NY2d 320, 324,
 
 supra)
 
 compels the conclusion that an agreement to limit the appointing authority’s discretion must be expressly contained in the CBA to be enforceable, and we perceive no public policy that would preclude reliance on past practice to establish that an agreement on such an employment term had been reached. Accordingly, the fact that the Board’s agreement to limit its discretion was not contained in an express contractual provision provides no basis to disturb the arbitrator’s award.