In the Matter of the Arbitration between BUFFALO COUNCIL OF SUPERVISORS AND ADMINISTRATORS, LOCAL No. 10, AMERICAN FEDERATION OF SCHOOL ADMINISTRATORS, Appellant, and BOARD OF EDUCATION OF CITY SCHOOL DISTRICT OF BUFFALO, Respondent. [905 NYS2d 404]—

Appeal from an order of the Supreme Court, Erie County

(Donna M. Siwek, J.), entered December 10, 2008 in a proceeding pursuant to CPLR article 75. The order denied the petition to confirm an arbitration award.

It is hereby ordered that the order so appealed from is modified on the law by granting the petition in part and confirming the arbitration award with the exception of that part concerning article 4 of the collective bargaining agreement and as modified the order is affirmed without costs.

Memorandum: Petitioner commenced this proceeding pursuant to CPLR article 75 seeking to confirm an arbitration award that, inter alia, directed respondent to reinstate 17 members of petitioner who had been laid off. Respondent had previously negotiated with petitioner and other employee unions in an attempt to persuade the unions to accept a single health insurance carrier plan in place of the multiple health insurance carrier plan then required by each union's collective bargaining agreement (CBA) (*see generally Matter of Buffalo Teachers Fedn., Inc. v Board of Educ. of City School Dist. of City of Buffalo*, 50 AD3d 1503 [2008], *lv denied* 11 NY3d 708 [2008]). Petitioner refused to consent to the change and obtained an injunction to prevent respondent from imposing the single health insurance carrier plan on its members. Respondent subsequently laid off 26 of petitioner's members, purportedly in anticipation of the budgetary shortfall that would result from petitioner's refusal to accept the single health insurance carrier plan. As a result, petitioner filed two grievances alleging violations of certain provisions of the CBA, and those grievances proceeded to arbitration.

We agree with petitioner that Supreme Court erred in denying in its entirety the petition to confirm the arbitration award. The role of the courts with respect to disputes submitted to binding arbitration pursuant to a CBA is limited, and a court should not substitute its judgment for that of the arbitrator (*see Matter of Windsor Cent. School Dist. [Windsor Teachers Assn.]*, 306 AD2d 669, 670 [2003], *lv denied* 100 NY2d 510 [2003]). Unless the arbitration award "is clearly violative of a strong public policy, . . . is totally or completely irrational, or . . . manifestly exceeds a specific, enumerated limitation on the arbitrator['s] power," the award must be confirmed (*Matter of NFB Inv. Servs. Corp. v Fitzgerald*, 49 AD3d 747, 748 [2008]; *see* CPLR 7510; *Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.*, 1 NY3d 72, 79 [2003]). "An award is irrational if there is 'no proof whatever to justify the award' " (*NFB Inv. Servs. Corp.*, 49 AD3d at 748).

Pursuant to the provisions of the CBA, the arbitrator was empowered to make decisions regarding "application and interpretation of the provisions of [that] contract," and those decisions were to "be accepted as final by the parties." The arbitrator interpreted article 3, § O of the CBA to require respondent to afford petitioner an opportunity to be heard on the layoff and method of layoff of 26 assistant principals. Such an interpretation is rationally based on the plain language of that section, which states that petitioner or its representative shall be consulted in "matters that affect the administration and supervision of all schools." The extent, if any, to which "the arbitrator may have misconstrued or disregarded the plain meaning of the contract" is of no moment where, as here, the arbitrator's determination is not irrational (*Matter of Peckerman v D & D Assoc.*, 165 AD2d 289, 296 [1991]).

We further conclude that the arbitrator's determination that article 3, § V of the CBA required respondent to establish a list for each tenure area and maintain that list for the purpose of recalling laid-off employees was also rational. That section states that any employee covered by the CBA who is terminated for any reason other than evaluation "shall be assigned to the next available vacancy in the same or similar tenure area according to seniority." Here, there was evidence before the arbitrator that respondent had a past practice of distinguishing between elementary and secondary school assistant principals for the purpose of tenure (*see Windsor Cent. School Dist.*, 306 AD2d at 670; *see also Rochester City School Dist. v Rochester Teachers Assn.*, 41 NY2d 578, 583 [1977]). The arbitrator's determination requiring respondent "to cease and desist from using separate [tenure] lists for layoff[s] and recall[s]," as well as requiring the parties to discuss their respective positions concerning the meaning of the term "tenure area" as used in the CBA, was within the arbitrator's broad powers to fashion an appropriate remedy to resolve the dispute (*see generally Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers*, 46 NY2d 727, 729 [1978]; *Matter of Bridge & Tunnel Officers Benevolent Assn. v Triborough Bridge & Tunnel Auth.*, 57 AD3d 398, 399 [2008], *lv denied* 12 NY3d 711 [2009]). The arbitrator properly retained jurisdiction to determine the issue if the parties failed to reach an agreement (*see Bridge & Tunnel Officers Benevolent Assn.*, 57 AD3d at 399).

Contrary to the further contention of petitioner, however, the court properly refused to confirm that part of the arbitration award determining that respondent violated article 4 of the CBA and directing respondent to reinstate all but the nine least

senior assistant principals who had been laid off. The arbitrator explicitly recognized that respondent had the authority to lay off employees for economic reasons without violating the CBA but nevertheless concluded that petitioner bore a disproportionate share of the projected budgetary shortfall. In reaching that conclusion, however, the arbitrator erred in considering the financial savings that resulted from the layoffs of petitioner's members against the $800,000 projected budgetary shortfall directly related to petitioner's refusal to accept the single health insurance carrier plan rather than against the $12 million projected overall budgetary shortfall for the fiscal year. The arbitrator also failed to account for those laid-off employees who were not members of petitioner in his determination of proportionality. Thus, that part of the arbitration award is irrational because "there is 'no proof whatever to justify [it]' " (*NFB Inv. Servs. Corp.*, 49 AD3d at 748). Moreover, by reinstating several of those assistant principals who were laid off, "the arbitrator conferred a benefit on [those employees] to which they were not contractually entitled, i.e., a job security clause, and thereby modified the terms of the CBA in contravention of the explicitly enumerated limitation on his powers" (*Buffalo Teachers Fedn., Inc.*, 50 AD3d at 1507).

We therefore modify the order by granting the petition in part and confirming the award with the exception of that part concerning article 4 of the CBA.

All concur except Scudder, P.J., and Martoche, J., who dissent in part and vote to affirm in the following memorandum.

Scudder, P.J., and Martoche, J. (dissenting in part). We respectfully dissent in part and would affirm the order that denied in its entirety the petition to confirm the arbitration award. The majority concludes that Supreme Court erred in refusing to confirm those parts of the arbitration award determining that respondent violated article 3, §§ O and V of the collective bargaining agreement (CBA). We disagree.

Article 3, § O of the CBA provides that the parties "jointly recognize Principals as the responsible professional heads and educational leaders of the schools they administer, and Assistant Principals as their immediate aides. In this capacity, Principals shall be consulted in all matters directly affecting the operation of their schools. Concerning matters that affect the administration and supervision of all schools, which are provided for in this contract, the Superintendent shall consult [petitioner] or its representative. This shall not be interpreted as affecting the rights and responsibility of [respondent] to make policy decisions affecting the schools."

The majority concludes that the arbitrator's interpretation of that provision is rational and that respondent was required to consult with petitioner on the matter of layoffs because it affected " 'the administration and supervision of all schools.' " We disagree with the majority's conclusion that such consultation did not take place. The record establishes that respondent consulted with petitioner through negotiations concerning the underlying issue of the single health insurance carrier plan and the alternatives available to respondent if petitioner did not accept that plan. The arbitrator conceded as much when he stated that petitioner "steadfastly refused to agree to a single [health insurance] carrier [plan] as it bargained with [respondent]. Unrefuted testimony presented shows that at a bargaining session . . . , when the parties did not reach agreement on the single [health insurance] carrier issue, [respondent] ended the session by telling [petitioner's] negotiators that" layoffs were imminent. That statement establishes that the single health insurance carrier issue was negotiated at length and that respondent made petitioner well aware that, if the single health insurance carrier plan was not accepted, there would be a significant financial shortfall that would require the termination of some of petitioner's members. The majority does not state what sort of "consultation" would be legally required and, in our view, this is not a situation where the employer arbitrarily and unilaterally imposed a condition on employees without prior notice or discussion.

We further conclude that the arbitrator's interpretation of article 3, § O is irrational (*see generally Matter of NFB Inv. Servs. Corp. v Fitzgerald*, 49 AD3d 747 [2008]). The terms "administration" and "supervision" contained therein are not otherwise defined in the CBA, and matters on which petitioner must be consulted are limited to those matters of administration and supervision that "are provided for in [the CBA]." We find no provision in the CBA that encompasses the termination of employees for financial reasons.

We reach a similar conclusion with respect to the arbitrator's determination that respondent violated article 3, § V of the CBA, which states that "[s]hould the position held by an employee covered by [the CBA] be eliminated for reasons other than evaluation, the employee shall be advised of the reason or reasons and shall be assigned to the next available vacancy in the same or similar tenure area according to seniority." The arbitrator interpreted that provision to require respondent to establish a list for each tenure area and maintain that list for the purpose of recalling laid-off employees. Petitioner contends

that respondent improperly used one list for layoffs and another for recalls. It further contends that the assistant principals were pooled together in the general tenure area of "assistant principal" for the purpose of layoffs, without distinction between elementary and secondary school principals but that they were not recalled pursuant to the same list. We reject those contentions. The plain language of the CBA states that laid-off employees shall be recalled "to the next available vacancy in the same or similar tenure area" and, at the time of the grievance hearing, many of the laid-off assistant principals were recalled, but it is unclear from the record what list was used to recall them.

The Court of Appeals has held that decisions regarding general and narrow tenure area designations are to be made at the discretion of the school district (*see generally Matter of Bell v Board of Educ. of Vestal Cent. School Dist.*, 61 NY2d 149, 151-152 [1984]). Here, respondent classifies assistant principals as a tenure area, but it does not distinguish between elementary and secondary school assistant principals. Because petitioner failed to establish which list was used to recall the assistant principals, it is impossible to determine whether laid-off assistant principals were recalled to "same or similar tenure area[s]." Thus, we conclude that the arbitrator's determination that respondent violated article 3, § V is irrational and that the arbitrator exceeded his authority in directing respondent to create such lists.

The irrationality of the arbitrator's interpretation of the CBA is underscored by the majority's conclusion that the arbitrator erred in directing respondent to reinstate all but the nine least senior assistant principals who had been laid off. The majority recognizes that, by reinstating several of those assistant principals who were laid off, "the arbitrator conferred a benefit on [those employees] to which they were not contractually entitled, i.e., a job security clause, and thereby modified the terms of the CBA in contravention of the explicitly enumerated limitation on his powers" (*Matter of Buffalo Teachers Fedn., Inc. v Board of Educ. of City School Dist. of City of Buffalo*, 50 AD3d 1503, 1507 [2008], *lv denied* 11 NY3d 708 [2008]). If, as the majority otherwise concludes, respondent violated the CBA by failing to consult with petitioner concerning a matter affecting "the administration and supervision of all schools," i.e., layoffs based on a financial emergency, then the obvious remedy is for the arbitrator to require such consultation, as part of his broad powers to fashion an appropriate remedy to resolve the dispute (*see generally Board of Educ. of Yonkers City School*

*Dist. v Yonkers Fedn. of Teachers*, 46 NY2d 727, 729 [1978]). If, however, the ultimate remedy recommended by the arbitrator of reinstating certain assistant principals is outside the scope of the arbitrator's authority, then we cannot see how laying off of members of petitioner may be considered within the scope of "the administration and supervision of all schools," so that respondent was required to consult with petitioner with respect thereto and violated the CBA by failing to do so. Where a school district is "[f]aced with spiraling operating costs and ever increasing demands on [its] tax base[ ], [it] must have sufficient latitude within the law to manage [its] affairs efficiently and effectively. This implies, where appropriate, the power to consolidate and abolish positions for economic reasons" (*Matter of Young v Board of Educ. of Cent. School Dist. No. 6, Town of Huntington*, 35 NY2d 31, 34 [1974]). Thus, where parties to a CBA do not agree to a job security clause, a school board such as respondent is free to abolish positions "provided [its] action[s are] done for the purpose of managing its affairs efficiently and economically" (*Board of Educ. of Cent. School Dist. No. 1 of Towns of Niagara, Wheatfield, Lewiston & Cambria v Niagara Wheatfield Teachers Assn.*, 54 AD2d 281, 283 [1976], *lv denied* 41 NY2d 801 [1977]). We therefore conclude that the court properly denied the petition in its entirety. Present—Scudder, P.J., Martoche, Fahey, Green and Gorski, JJ.