# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

117

CA 10-02491

PRESENT: SCUDDER, P.J., CENTRA, PERADOTTO, LINDLEY, AND MARTOCHE, JJ.

---

IN THE MATTER OF THE ARBITRATION BETWEEN
RONALD LUCAS, AS PRESIDENT OF TEAMSTERS LOCAL
264 OF THE INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, PETITIONER-RESPONDENT,

AND                                                    MEMORANDUM AND ORDER

CITY OF BUFFALO, BYRON BROWN, MAYOR, STEVEN
STEPNIAK, COMMISSIONER, PUBLIC WORKS, PARKS
AND STREETS, AND KARLA THOMAS, COMMISSIONER,
HUMAN RESOURCES, RESPONDENTS-APPELLANTS.
(APPEAL NO. 1.)

---

GOLDBERG SEGALLA, LLP, BUFFALO (MELANIE J. BEARDSLEY OF COUNSEL), FOR
RESPONDENTS-APPELLANTS.

REDEN & O'DONNELL, LLP, BUFFALO (TERRY M. SUGRUE OF COUNSEL), FOR
PETITIONER-RESPONDENT.

---

Appeal from a judgment and order (one paper) of the Supreme
Court, Erie County (Diane Y. Devlin, J.), entered September 17, 2010
in a proceeding pursuant to CPLR article 75.  The judgment and order,
among other things, confirmed an arbitration award.

It is hereby ORDERED that the judgment and order so appealed from
is unanimously affirmed without costs.

Memorandum:  Petitioner commenced these proceedings pursuant to
CPLR article 75 seeking to confirm two arbitration awards.  The August
21, 2009 arbitration award at issue in appeal No. 1 (hereafter, 2009
award) found that respondents had violated the collective bargaining
agreement (CBA) by ignoring a binding past practice in which the most
senior caulker supervisor was to be offered the right of first refusal
for the acting-time position of Assistant Water Distribution
Superintendent.  The 2009 award further directed that the impacted
employees shall be made whole, and the arbitrator retained
jurisdiction only in the event that the parties were unable to
implement the remedy "or determine the amount of the make whole
remedy."  The parties were unable to implement the remedy or determine
the amount thereof, and they returned to the arbitrator.  The October
25, 2010 arbitration award at issue in appeal No. 2 (hereafter, 2010
award) directed respondents to pay Donald Mackowiak the sum of
$54,282.71 and Ronald French the sum of $1,094.99 based on
respondents' failure to provide Mackowiak and French with the right of

first refusal.  By the judgment and order in each appeal, Supreme Court confirmed the awards and denied respondents' counterclaims to vacate the awards.

We reject respondents' contentions that the awards require them to violate Civil Service Law § 61 (2) and § 64 (2) and are against public policy.  Although pursuant to section 61 (2) employees are prohibited from serving in out-of-title positions in nonemergency situations (*see Evangelista v Irving*, 177 AD2d 1005, 1006), respondents' submissions to the court establish that, at least as of January 2010, respondents considered acting-time positions to be temporary appointments under section 64 (2), and such temporary appointments are made "without regard to existing eligible lists" (*id.*).  Section 64 (2) does not specify that there must be an emergency situation for an employee to be temporarily appointed to work for a period not exceeding three months in an acting-time position (*see* § 61 [2]).  Further, there is no indication in the record that the employees who worked in acting-time positions during the time period involved in the grievance were improperly appointed to those positions in violation of the Civil Service Law.

Although as noted section 64 (2) places a three-month time limit on temporary appointments that are completed without reference to an existing eligible list, the 2009 award does not require respondents to *grant* the most senior caulker supervisor an acting-time position whenever an Assistant Water Distribution Superintendent is absent. Rather, the award merely states that, if there is an acting-time position, then the right of first refusal must be given to the most senior caulker supervisor.

Further, the 2009 award does not define what constitutes an acting-time position.  Indeed, we note that, just as respondents are not bound to grant acting-time positions under the 2009 award but instead must merely offer the right of first refusal, respondents are also free to define acting-time positions under the award to the extent that such definition is consistent with the CBA.  Thus, it is completely within the power of respondents to determine whether the three-month time limit set forth in section 64 (2) is violated, and it therefore cannot be said that the 2009 award violates the Civil Service Law or public policy on those grounds.

To the extent that respondents contend that the 2010 award must be vacated because an employee has no right to a job appointment that does not comply with the Civil Service Law and no right to back pay where he or she was not appointed in accordance with the Civil Service Law, that contention is without merit.  There is no indication that the individuals working in acting-time positions were improperly appointed to those positions in violation of the provisions of the Civil Service Law.

We reject the further contention of respondents that the damages awarded by the 2010 award are speculative or contrary to public policy.  The monetary awards provided to Mackowiak and French were based upon the instances after September 2005 when respondents failed

to offer those individuals the right of first refusal. Specifically, the impacted workers were paid the difference between their own wages and the wages they would have earned in the acting-time position of Assistant Water Distribution Superintendent, as well as lost overtime opportunities for those occasions. Thus, the record establishes that the 2010 award was not speculative, but was properly "intended to compensate the [workers] at issue for the losses [they] sustained based on [respondents'] failure to comply with the terms of the [CBA]" (*Matter of Mohawk Val. Community Coll. [Mohawk Val. Community Coll. Professional Assn.]*, 28 AD3d 1140, 1141).

We further reject respondents' contention that, under the circumstances of this case, a limitation on their discretion regarding acting-time positions violates public policy. A public employer is not prohibited by public policy considerations from agreeing to limit its discretion in the manner in which it appoints employees (*see Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.]*, 90 NY2d 364, 374-376 [*PCTEA*]); such an agreement may be inferred from past practice and prior negotiations, and it need not be explicitly set forth in the CBA (*see id.* at 377 n 6). Where there are public policy implications that warrant a waiver of discretion, there must be "compelling evidence that [there was] a conscious choice to do so" (*Matter of Buffalo Police Benevolent Assn. [City of Buffalo]*, 4 NY3d 660, 664; *see generally Consedine v Portville Cent. School Dist.*, 12 NY3d 286, 294).

Here, the record contains the hearing testimony concerning a past practice of offering the acting-time position to the most senior caulker supervisor and, according to the arbitrator, the "records" from the time period in question support that assertion. In addition, article 22 of the CBA provides that "[a]ll conditions or provisions beneficial to employees now in effect which are not specifically provided for in this agreement, or which have not been replaced by provisions of this agreement, shall remain in effect for the duration of this agreement, unless mutually agreed otherwise between [respondent City of Buffalo] and the Union." The records in question, together with article 22 of the CBA, are sufficient to establish a past practice in which respondents waived their discretion. This is not a situation where the safety of the community is involved (*cf. Buffalo Police Benevolent Assn.*, 4 NY3d at 664), and we thus conclude that public policy does not require an explicit waiver. Nor is this an appointment to a permanent position. At most, an employee will be in the position for a period not in excess of three months. Therefore, under these circumstances, respondents have "not relinquished [their] ultimate appointment authority" (*PCTEA*, 90 NY2d at 377), and there are no public policy barriers to a waiver of discretion.

We reject respondents' contentions that the arbitrator's awards are completely irrational, and in excess of the arbitrator's power as limited by the CBA. It is well settled that "[t]he role of the courts with respect to disputes submitted to binding arbitration pursuant to a CBA is limited, and a court should not substitute its judgment for that of the arbitrator . . . Unless the arbitration award 'is clearly

violative of a strong public policy, . . . is totally or completely irrational, or . . . manifestly exceeds a specific, enumerated limitation on the arbitrator['s] power,' the award must be confirmed" (*Matter of Buffalo Council of Supervisors & Adm'rs, Local No. 10, Am. Fedn. of School Adm'rs [Board of Educ. of City School Dist. of Buffalo]*, 75 AD3d 1067, 1068). As discussed herein, the awards are not against public policy, and we equally reject respondents' contention that the arbitrator's awards are irrational and were issued in excess of the arbitrator's authority. "An award is irrational if there is 'no proof whatever to justify the award' " (*Buffalo Council of Supervisors & Adm'rs, Local No. 10, Am. Fedn. of School Adm'rs*, 75 AD3d at 1068; *see Matter of Buffalo Teachers Fedn., Inc. v Board of Educ. of City School Dist. of City of Buffalo*, 50 AD3d 1503, 1505, *lv denied* 11 NY3d 708).

Pursuant to the CBA, the arbitrator could not amend, modify, or delete any provision of the CBA. The arbitrator did not violate that provision, however, nor are the arbitrator's awards irrational inasmuch as it cannot be said that there is no proof whatever to support them. Indeed, the arbitrator recounted the hearing testimony and evidence tending to establish a past practice concerning the distribution of acting time in which the most senior caulker supervisor was given the right of first refusal. Although we acknowledge that there was contradictory testimony regarding the past practice, there nevertheless is proof in the record to justify the arbitrator's awards such that it cannot be said that they are irrational and that the arbitrator exceeded the power granted to him under the CBA.

Entered:  March 16, 2012                    Frances E. Cafarell
                                            Clerk of the Court