Matter of City of Troy (Troy Police Benevolent & Protective Assn., Inc.) (2021 NY Slip Op 01170)





Matter of City of Troy (Troy Police Benevolent & Protective Assn., Inc.)


2021 NY Slip Op 01170


Decided on February 25, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 25, 2021

529660

[*1]In the Matter of the Arbitration between City of Troy, Appellant, and Troy Police Benevolent and Protective Association, Inc., Respondent.

Calendar Date: January 14, 2021

Before: Garry, P.J., Lynch, Clark, Aarons and Colangelo, JJ.


Goldberg Segalla, LLP, Albany (Jonathan M. Bernstein of counsel), for appellant.
Gleason, Dunn, Walsh & O'Shea, Albany (Mark T. Walsh of counsel), for respondent.



Garry, P.J.
Appeal from an order of the Supreme Court (Zwack, J.), entered July 16, 2019 in Rensselaer County, which, among other things, denied petitioner's application pursuant to CPLR 7503 to permanently stay arbitration between the parties.
Petitioner, a municipal corporation, and respondent, the employee organization representing certain employees of petitioner's police department, executed a collective bargaining agreement (hereinafter CBA) with terms that remained in effect at the relevant time (see Civil Service Law § 209-a [1] [e]). The CBA required petitioner to fill "vacant promotional positions . . . from [c]ivil [s]ervice lists within thirty (30) days." Two months after an individual was promoted from the position of captain to assistant chief, leaving a vacant captain position, respondent and three of its members who were police sergeants filed a grievance alleging that petitioner violated the CBA when it failed to promote one of the three eligible sergeants to the position of captain within 30 days. Respondent further alleged that the three members were eligible for such promotion due to their respective scores ranking them the top three civil service examinees (see Civil Service Law § 61 [1]). Petitioner denied the grievance on multiple grounds. Respondent sent petitioner a demand for arbitration pursuant to the CBA. Petitioner commenced this proceeding pursuant to CPLR 7503 to permanently stay arbitration between the parties. Respondent cross-moved to compel arbitration. Supreme Court denied petitioner's application for a stay and granted respondent's cross motion to compel arbitration. Petitioner appeals.
When deciding whether to stay or compel arbitration under CPLR 7503, courts are "concerned only with the threshold determination of arbitrability, and not with the merits of the underlying claim" (Matter of City of Lockport [Lockport Professional Firefighter Assn., Inc.], 141 AD3d 1085, 1086-1087 [2016] [internal quotation marks and citation omitted]). In general, "any doubts as to whether an issue is arbitrable will be resolved in favor of arbitration" (id. at 1087 [internal quotation marks, brackets and citation omitted]).
"Under [New York's] modern arbitration jurisprudence, judicial intervention on public policy grounds constitutes a narrow exception to the otherwise broad power of parties to agree to arbitrate all of the disputes arising out of their juridical relationships, and the correlative, expansive power of arbitrators to fashion fair determinations of the parties' rights and remedies" (Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO, 99 NY2d 1, 6-7 [2002]; see Matter of Walker [Read], 168 AD3d 1253, 1255 [2019]). The public policy exception has a limited role and applies "only in cases in which public policy considerations, embodied in statute or decisional law, prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator[*2]. Stated another way, the courts must be able to examine an arbitration agreement . . . on its face without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement" (Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO, 99 NY2d at 7 [internal quotation marks, emphasis and citation omitted]). "Judicial restraint under the public policy exception is particularly appropriate in arbitrations pursuant to public employment collective bargaining agreements" (id.; see Matter of City of Buffalo [Buffalo Police Benevolent Assn., Inc.], 150 AD3d 1641, 1643 [2017]). "The threshold determination of whether a dispute is arbitrable is well settled. Proceeding with a two-part test, we first ask whether the parties may arbitrate the dispute by inquiring if there is any statutory, constitutional or public policy prohibition against arbitration of the grievance. If no prohibition exists, we then ask whether the parties in fact agreed to arbitrate the particular dispute by examining their collective bargaining agreement" (Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807, 8 NY3d 513, 519 [2007] [internal quotation marks and citations omitted]; see Matter of Village of Endicott [Village of Endicott Police Benevolent Assn., Inc.], 182 AD3d 738, 740 [2020]).
Petitioner raises only the first, "may-they-arbitrate," prong, essentially conceding, under the second prong, that the parties' broad arbitration clause covered this issue. "A public employer's promotional practices may lawfully be the subject of collective bargaining" (Matter of Apuzzo v County of Ulster, 98 AD2d 869, 870 [1983], affd 62 NY2d 960 [1984]), and, if agreed upon, may be the subject of arbitration when a related grievance is alleged. Article XXV of the CBA, addressing promotions to newly-created and vacant positions, provides that "vacant promotional positions shall be filled from [c]ivil [s]ervice lists within thirty (30) days; provided, however, that if any list would expire prior to that time, the positions will be filled before the expiration of the list in existence at the time the vacancy occurs, or the new position is created." Petitioner asserts that this provision is contrary to Civil Service Law § 61 (1), which states, as relevant here, that "[a]ppointment or promotion from an eligible list to a position in the competitive class shall be made by the selection of one of the three persons certified by the appropriate civil service commission as standing highest on such eligible list." The CBA is not in conflict with the statute. This is not a situation where, contrary to the language of that statute, a CBA required the municipality to hire the highest scoring person on the list for a police officer position rather than choose one of the top three candidates (see Matter of Buffalo Police Benevolent Assn[*3]. [City of Buffalo], 4 NY3d 660, 662 [2005]).[FN1] Petitioner retained the discretion to choose from among the top three candidates, but voluntarily agreed to make such choice within a certain time frame. Furthermore, the 30-day limit did not automatically deprive petitioner of the opportunity to carefully consider the merit and fitness of the eligible candidates, and petitioner's argument in this regard is conclusory and unsupported. As Civil Service Law § 61 contains no time requirements, the CBA provision did not violate that statute or any related public policy.
Petitioner, like any municipality, has an interest in controlling its budget and spending. However, as respondent correctly asserts, the CBA provision at issue does not unduly inhibit petitioner's control and discretion in this regard. The provision applies only to newly-created or vacant positions; it does not prohibit petitioner from laying off current employees or even abolishing positions (compare Matter of Village of Johnson City [Johnson City Firefighters Assn., Local 921 IAFF], 75 AD3d 817, 818 [2010]). Although the clause would allow petitioner to eliminate an open captain position and thereby save the expenses related to that position, petitioner has bargained away its ability to keep the position as a line item in the budget but not fill it when it becomes vacant. This partial limit on a municipality's power to control its budget, which limit was voluntarily agreed upon in the CBA, is not against public policy (see Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers' Assn.], 37 NY2d 614, 617-618 [1975] [noting that the government employer "was always free to bargain voluntarily about staff size and was also, therefore, free to agree to submit to arbitration disputes about staff size"]; Matter of Village of Johnson City [Johnson City Firefighters Assn., Local 921 IAFF], 75 AD3d at 818; Matter of City of Binghamton [Binghamton Firefighters, Local 729, AFL-CIO], 20 AD3d 859, 860 [2005]). Even if petitioner would generally have discretion regarding when or whether to fill a vacant position had staffing or promotional practices not been addressed in a CBA (see Matter of Turel v Delaney, 287 NY 15, 16 [1941]; Matter of New York State Law Enforcement Officers, Dist. Council 82, AFSCME, AFL-CIO v New York State Off. of Mental Health, 175 Misc 2d 663, 669 [Sup Ct, Albany County 1998] [stating, in a case not involving a CBA, that a municipality "may determine to leave a vacant position unfilled — particularly for reasons of efficiency or economy or downsizing"]; Matter of Bailey v Kern, 177 Misc 904, 905 [Sup Ct, New York County 1942]; see also Matter of Young v Board of Educ. of Cent. School Dist. No. 6, Town of Huntington, 35 NY2d 31, 34 [1974]), petitioner voluntarily partially surrendered that right in the CBA and such a self-imposed restriction on its own discretion does not violate public policy (see Matter of Professional, Clerical, Tech. Empls[*4]. Assn. [Buffalo Bd. of Educ.], 90 NY2d 364, 376 [1997]; see also Matter of Burke v Bowen, 40 NY2d 264, 267 [1976]). The cases relied upon by petitioner on this issue are factually dissimilar or otherwise inapt.
No constitutional provision prohibits arbitration here. The NY Constitution provides, in relevant part, that no municipality "shall give or loan any money or property to . . . any individual" (NY Const, art VIII, § 1). Nevertheless, "the payment of public funds as damages for breach of a contractual obligation or in settlement of a contested claim [or grievance] is not prohibited by this constitutional provision" (Ingram v Boone, 91 AD2d 1063, 1064 [1983]; see Matter of Antonopolou v Beame, 32 NY2d 126, 130-131 [1973]; Piro v Bowen, 76 AD2d 392, 398 [1980], lv denied 52 NY2d 702 [1980]; compare 1983 Ops St Comp No. 83-158 at 199). Moreover, the Court of Appeals has "acknowledged that situations may exist in which although public policy would be violated by granting the remedy requested by one or more of the parties, it may still be premature for a court to intercede because the arbitrator may be able to fashion a remedy not in violation of public policy" (Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO, 95 NY2d 273, 283 [2000]). Thus, petitioner has not shown that permitting arbitration here would violate any constitutional provision or related public policy.
Petitioner argues that respondent lacks standing because it does not represent individuals in the position of captain. However, respondent represents individuals that were seeking the position of captain and were eligible under the civil service list for that position. Given respondent's apparent standing, any further standing argument should be addressed to the arbitrator. Considering the broad scope of the CBA's arbitration clause, any argument concerning compliance with the grievance process, including any time limitations thereunder, is likewise a matter for the arbitrator to decide (see Matter of Enlarged City School Dist. of Troy [Troy Teachers Assn.], 69 NY2d 905, 907 [1987]; Matter of City of Albany [Pomakoy], 142 AD2d 775, 775-776 [1988], lv denied 73 NY2d 870 [1989]). We have considered petitioner's remaining arguments and find them to be without merit. Accordingly, Supreme Court properly compelled the parties to arbitrate this matter.
Lynch, Clark, Aarons and Colangelo, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: In Matter of Buffalo Police Benevolent Assn. (City of Buffalo) (4 NY3d 660 [2005]), the Court of Appeals held that public policy did not permit a conclusion that the head of a police department gave up his power to choose the most qualified person for an important public safety position "— at least in the absence of compelling evidence that the [department head] made a conscious choice to do so" (id. at 664). As noted in that last phrase, the Court did not rule out the possibility that a public employer could voluntarily bargain with respect to the exercise of its discretion to choose from among the top three candidates for a police employee position, as the Court had already ruled a municipality could do for positions not implicating public safety (see Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.], 90 NY2d 364, 376 [1997]).